United States Court of Appeals,

Fifth Circuit.

No. 93-5490.

Andrea Millicent PIERCE, Plaintiff-Appellant,

v.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION, et al., Defendants-Appellees.

Nov. 15, 1994.

Appeal from the United States District Court for the Eastern District of Texas.

Before POLITZ, Chief Judge, GOLDBERG and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

Andrea Millicent Pierce appeals the trial court's judgment in favor of Appellees Texas Department of Criminal Justice, Institutional Division (TDCJ), Warden Janie Cockrell, and Assistant Warden Harry Kinker. Pierce sued all three defendants for retaliation under Title VII, and the two wardens under 42 U.S.C. § 1983 for retaliation against her for her alleged First Amendment speech. The Title VII claim was tried to a judge, who entered judgment for Defendants. The § 1983 claim was tried to a jury, which rendered its verdict for Pierce. Nevertheless, on the § 1983 claim the court granted Defendants' Rule 50 motion for judgment as a matter of law. We affirm.

BACKGROUND

Pierce, an African-American female, has been a corrections officer for fourteen years. She began working for TDCJ in 1987. TDCJ transferred her to its Beto I Unit in 1988. Pierce engaged in

1

general whistleblowing activity beginning in July 1990. She wrote an anonymous letter to the Internal Affairs Division about a relationship between a female officer and a male inmate. She reported other officer-inmate relationships and racial slurs written in places to which only officers had access. Pierce filed several charges of discrimination with the Equal Employment Opportunity Commission (EEOC), and she filed numerous grievances with the warden.

Kinker served as assistant warden at Beto I from 1990 to September 1992. He was responsible for making personal investigations of reported wrongdoing. Cockrell has served as senior warden of Beto I since August 1991. Beto I is an all-male, maximum-security prison. The prison houses 3342 inmates and has 1110 employees.

Pierce complains about the following employment-related incidents. Kinker investigated a verbal altercation between Pierce and another officer that took place in December 1990. Kinker found the other officer guilty and Pierce not guilty in the investigation. In September 1991, Pierce reported to Cockrell a relationship between a female officer and a male inmate. A few weeks later, Pierce was ordered to undergo a polygraph examination. Another time Kinker warned her to stay out of other people's business and to take care of herself. According to Pierce, Kinker also told one of her supervising officers that Pierce was the smartest black, and if he got her, the rest of the blacks would fall into line. Pierce was videotaped without authorization once

while working in the library.  In July 1992, Pierce was assigned to guard the general population showers.  She was the only woman at that time to receive such an assignment.  Internal Affairs investigated Pierce during the summer of 1992 for taking food from an inmate.  The investigation lasted three months, but Pierce was found not guilty.  In addition, Pierce was written up on five occasions for minor infractions, such as tardiness or walking slow on post.

In January 1993, Cockrell reprimanded Pierce for allegedly telling an inmate to lie.  The reprimand was the result of an Internal Affairs investigation dating back to July 1991.  In April 1993, Cockrell put Pierce on probation and reduced her pay for disclosing confidential information over the telephone.  Pierce had spoken with a union representative after an inmate had sexually assaulted a female officer.

## DISCUSSION

The district court entered judgment as a matter of law on the § 1983 claim after the jury had rendered its verdict.  *See* Fed.R.Civ.P. 50(b).  We review that action de novo.  *Omnitech Int'l, Inc. v. Clorox Co.,* 11 F.3d 1316, 1322 (5th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 71, --- L.Ed.2d ---- (1994).  We will reverse if a rational jury could have concluded as the jury did.  *Id.* at 1323.  In contrast, the trial court served as the factfinder for the Title VII claim.  We review a trial court's findings of fact from a bench trial under a clearly erroneous standard.  Fed.R.Civ.P. 52(a).

*I. Section 1983 Claim*

Pierce's § 1983 claim is based on claims that Kinker and Cockrell retaliated against her for speaking out on matters of public concern. To establish a prima facie case, Pierce must prove: (1) Defendants were acting under color of state law; (2) Pierce's speech activities were protected under the First Amendment; and (3) Pierce's exercise of her protected right was a substantial or motivating factor in Defendants' actions. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). The trial court ruled that Pierce did not establish the third element. The court determined that causation was lacking.

Before we can determine whether evidence of causation exists, we must identify the protected speech and the harm. Pierce's protected speech consists of her whistleblowing activity, which occurred regularly between 1990 and 1993. Both Pierce and the trial court agreed that numerous examples of protected speech were present. The trial court disagreed with Pierce, however, with regard to harm. The trial court cited the January 1993 reprimand, the May 1993 probation/reduction in pay, and the minor disciplinary write-ups as adverse employment decisions. Pierce points to other events that she claims had the effect of chilling her speech.

To establish a First Amendment violation, a public employee must demonstrate that she has suffered an adverse employment action for exercising her right to free speech. *McCabe v. Sharrett,* 12 F.3d 1558, 1563 (11th Cir.1994). Adverse employment actions are

discharges, demotions, refusals to hire, refusals to promote, and reprimands. *Id.* (citing *Rutan v. Republican Party,* 497 U.S. 62, 74, 110 S.Ct. 2729, 2737, 111 L.Ed.2d 52 (1990)). The Supreme Court in *Rutan* held that the scope of harm actionable under the First Amendment was broader than actual or constructive discharge from employment. 497 U.S. at 74, 110 S.Ct. at 2737. Although *Rutan* concerned employment practices relating to political patronage, we have applied *Rutan* to retaliation claims.[1] *See Click v. Copeland,* 970 F.2d 106, 110-11 (5th Cir.1992); *see also Dorsett v. Board of Trustees for State Colleges & Univs.,* 940 F.2d 121, 123 (5th Cir.1991) (denying First Amendment claim because alleged retaliatory acts were not actionable).

Pierce would include other events within the scope of harm actionable under the First Amendment. We disagree. Although some actions may have had the effect of chilling her protected speech, they are not actionable. For instance, Pierce was investigated

---

[1]*Rutan* 's delineation of the scope of harm actionable under the First Amendment comports with our pre-*Rutan* retaliation cases. *See Bickel v. Burkhart,* 632 F.2d 1251, 1255 n. 6 (5th Cir.1980) (requiring important conditions of employment to be involved in the retaliation). The last sentence of *Rutan* 's footnote 8, however, can be read to create a distinction between retaliation and other claims under the First Amendment. *See* 497 U.S. at 76 n. 8, 110 S.Ct. at 2738 n. 8 (suggesting that trivial acts of retaliation may be actionable). Such a literal reading of this Supreme Court dictum "would be a serious mistake" because that sentence is inconsistent with the body of the opinion. *Scott v. Flowers,* 910 F.2d 201, 216 n. 32 (5th Cir.1990) (Garwood, J., dissenting). *But see Tao v. Freeh,* 27 F.3d 635, 639 (D.C.Cir.1994) (applying *Rutan* 's footnote 8 as the standard for actionable harm in First Amendment retaliation claim). We choose not to read the Supreme Court's dicta literally; rather, we apply the main analysis of *Rutan* to retaliation claims and require more than a trivial act to establish constitutional harm.

5

once for trafficking and once for a verbal altercation.  Neither investigation resulted in any action being taken against Pierce.  Similarly, the videotaping took place in a public place, even though the action was unauthorized.  Pierce's polygraph examination and Kinker's threat to her to mind her own business do not amount to adverse employment decisions because no adverse result occurred.

The other incidents alleged by Pierce are also not actionable.  Pierce was written up for minor infractions by junior officers.  No evidence connects Cockrell and Kinker to these disciplinary measures.[2]  Vicarious liability does not apply to § 1983 claims.  *Monell v. Department of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).  Pierce's assignment to the showers is not actionable because it is a regular assignment for prison guards at Beto I.  Pierce does not suggest that she was incapable of performing that assignment.  Nor does evidence show that shower assignment was punishment.  The fact that Pierce may have been the first woman assigned to guard the general population showers does not equate the assignment with punishment.  Because shower assignment does not amount to a sanction, Pierce's assignment is not actionable.

Now we must determine whether a rational jury could find that Pierce's exercise of her protected speech was a substantial or

---

[2]Kinker's statement about "getting Pierce" suggests a connection.  Of the five write-ups she received, one occurred in May 1993 and two more in July 1993.  The record does not indicate the dates of the other two.  Kinker, however, left Beto I in September 1992.  His lack of presence there during at least a majority of her write-ups negates any possible connection to them.

6

motivating factor in her reprimand or probation/reduction in pay. We recognize that summary disposition of this causal inquiry is often inappropriate. *Click,* 970 F.2d at 113. Cockrell's January 1993 reprimand of Pierce was the result of an Internal Affairs investigation begun in July 1991. Pierce points out that the only evidence against her was the word of an inmate. Cockrell replies that Internal Affairs controlled the investigation and that she had no choice but to discipline Pierce. Internal Affairs made the guilty finding. Cockrell selected the least sanction allowable for that offense under the TDCJ Guidelines. No evidence of retaliation is attributable to the reprimand.

Evidence of causation is also lacking with regards to Pierce's probation and reduction of pay in May 1993. A male inmate had sexually assaulted a female officer. Pierce was present with the officer and a nurse in the infirmary. The officer wanted another female officer present when she spoke with Internal Affairs. To assist in accomplishing this Pierce spoke with Ms. Harshe, an off-duty officer and union representative, on an outside telephone line. In the conversation Pierce released information concerning the assault to Ms. Harshe. Pierce thereby violated TDCJ Guidelines by making the phone call without receiving supervisor permission. She leaked news of a criminal investigation. Cockrell investigated the violation and disciplined Pierce for the unauthorized call, which she admitted making.[3] Because Pierce

_____

[3]Pierce notes that the nurse actually placed the call. The purpose of the offense, however, is to prevent unauthorized disclosure of confidential information.

committed a disciplinary violation for the second time within a year, Cockrell had the following disciplinary choices under the Guidelines: probation 10 to 12 months, suspension 21 to 30 workdays, reduction 2 to 3 steps, demotion 1 to 3 groups, any combination thereof, or dismissal. She disciplined Pierce for 12 months probation and reduced her pay 2 steps. The sanctions given were light in comparison to the maximum actions allowable under the Guidelines. No evidence suggests that Cockrell acted with any retaliatory intent when she disciplined Pierce.[4]

Pierce contends that *Click* requires us to leave causation in this case with the jury. We disagree. *Click* concerned a sheriff's transfer of two deputies who had announced their candidacies for the sheriff's position. The sheriff testified that he had transferred them to the jail because of a severe personnel shortage there. The deputies, however, introduced evidence that the sheriff had transferred five jail guards to law enforcement that same day. The court determined that the contradictory evidence was fodder for the jury. *Click,* 970 F.2d at 114. No such conflict exists in this case. Cockrell twice disciplined Pierce for violating the TDCJ Guidelines. Pierce does not allege facts that would allow a rational jury to conclude otherwise.

Given the evidence presented, no rational jury could have found that Pierce's exercise of her protected speech was a

---

[4]Pierce filed a grievance against Cockrell after Pierce received her sanction. She complained that Cockrell was in a bad mood at their meeting because of events that had occurred earlier in the day. Cockrell may have very well been in a bad mood, but the sanctions she imposed were reasonable under the Guidelines.

substantial or motivating factor for the disciplinary measures taken against her by the wardens. The disciplinary measures were taken for violations of the TDCJ Guidelines, and the sanctions imposed were relatively light. The trial court correctly granted Defendants' motion for judgment as a matter of law on the § 1983 claim.

*II. Title VII Claim*

Pierce contends that adverse employment actions were taken against her by TDCJ, Cockrell, and Kinker in retaliation for her activities in opposing unlawful practices or for filing EEOC charges of discrimination. To establish a Title VII retaliation claim, Pierce must prove: (1) that she engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that a causal connection existed between the participation in the protected activity and the adverse employment action. 42 U.S.C. § 2000e-3(a) (1988); *Shirley v. Chrysler First, Inc.,* 970 F.2d 39, 42 (5th Cir.1992).

The trial court determined that no causal connection existed between her protected activity and the adverse employment decisions. This causation inquiry is essentially the same inquiry undertaken for the § 1983 claim. Pierce again confronts the hurdle that the Defendants had legitimate reasons for imposing their two disciplinary measures. We see no clear error.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is AFFIRMED.

9