**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 95-20751**

---

**EUGENE M. HARRINGTON; MARTIN LEVY; THOMAS KLEVEN,**

**Plaintiffs-Appellees,**

**VERSUS**

**WILLIAM H. HARRIS, ET AL.,**

**Defendants,**

**JAMES M. DOUGLAS; CALIPH JOHNSON;**
**TEXAS SOUTHERN UNIVERSITY,**

**Defendants-Appellants.**

---

Appeal from the United States District Court
for the Southern District of Texas

---

July 21, 1997

**REVISED OPINION**

Before REYNALDO G. GARZA, DeMOSS, and PARKER, Circuit Judges.

DeMOSS, Circuit Judge:

The opinion issued in this case under date of March 14, 1997, is withdrawn and the following is issued in place thereof.

In this proceeding tried by consent before a magistrate judge, the jury found that three white law school professors, Plaintiffs Eugene M. Harrington, Martin Levy, and Thomas Kleven, of state-

1

supported Texas Southern University's Thurgood Marshall School of Law in Houston, Texas, had been discriminated against by the law school's dean, Defendant James M. Douglas, on the basis of protected speech, and by the school's associate dean, Defendant Caliph Johnson, on the basis of their race. The jury also found that Defendants Douglas and Johnson violated Plaintiffs' substantive due process rights. The jury awarded compensatory and punitive damages and judgment was entered. Holding that judgment as a matter of law should have been entered against Plaintiffs' as to their claims under § 1983 for First Amendment free speech retaliation, we reverse as to that issue, but affirm as to the issues of § 1981 race discrimination and Fourteenth Amendment substantive due process.

## BACKGROUND

Appellees/Plaintiffs Eugene M. Harrington ("Harrington"), Martin Levy ("Levy"), and Thomas Kleven ("Kleven") are tenured faculty members of the Texas Southern University Thurgood Marshall School of Law ("the law school") in Houston, Texas. They have been on the law school's faculty since 1966, 1972, and 1974, respectively. The parties do not dispute that the law school is a public university with a historically black majority enrollment.

In 1981, Appellant/Defendant James Douglas ("Douglas") was named dean of the law school. Appellant/Defendant Caliph Johnson ("Johnson") had been on the law school faculty since 1975 and served as associate dean from 1990 to 1992.

2

During Douglas' first semester as dean, Harrington and Levy approached Douglas concerning a Student Bar Association ("SBA") recommendation to appoint only black students to representative positions on various law school committees. Harrington and Levy believed that non-black student representation was important and they solicited Douglas to disregard the SBA recommendation and appoint non-black students.[1] It is unclear how Douglas reacted to their suggestions. Ultimately, the university president and a Texas state senator became involved and non-black students were subsequently appointed to the committees. Levy claims that the following year he received the lowest salary recommendation of any member on the faculty.

In May 1983, thirteen law school professors, including Levy and Kleven, signed a document entitled, "Bill of Particulars." In this document, the signatories complained that Dean Douglas discriminated against certain professors as to salaries, that he failed to adhere to law school policies, and that he mishandled various administrative duties. The Bill of Particulars addressed:

> the professors' concerns regarding American Bar Association (ABA) mandates, extreme insensitivity to the role of the Chicano students in the Law School, unilateral reduction of courses resulting in harm to students, reversing a long-standing policy on Senior Priority exams, unilateral increase in enrollment at the Law School, and such administrative matters as jeopardizing the status of the Law School by failing to develop

---

[1] The law school constitution allowed the Dean to appoint faculty representatives to the law school committees. Student representatives were chosen by the SBA.

3

> a plan for the clinical program, and failing to properly certify Law School graduates for the July 1982 Bar exam.

This Bill of Particulars also addressed the signatories' concern that certain professors had received arbitrary or unfair performance evaluations or salary increases. Appellee Harrington did not sign this document.

One month later, another letter was sent to Douglas, further detailing the professors' concerns. Douglas sent no written response. In July 1983, eight faculty members, including Levy and Kleven, wrote to the university's Vice-President for Academic Affairs requesting that the university dismiss Douglas as dean of the law school. Harrington did not sign this letter.

In early 1984, eighteen of the twenty-three full-time members of the law school faculty, including Harrington, Levy, and Kleven, participated in a vote of "confidence/no confidence" concerning Douglas. Twelve members of the faculty voted "no confidence" and six members abstained.

Approximately six months later, fifteen members of the law school faculty, including all three Plaintiffs, wrote a letter to the president of the university requesting that Douglas be removed as dean. The university president denied their request.

Several months later, eight members of the law school faculty wrote a letter to the President of the American Bar Association complaining that the university's refusal to remove Douglas violated ABA guidelines. Following an investigation, the ABA dismissed the complaint.

4

Beginning in 1985, Levy and Kleven, along with several of their black colleagues, complained to both the university president and vice-president about discriminatory treatment in their salaries. In 1986, then vice-president William Moore allegedly made salary adjustments for some of the professors, including Levy and Kleven; however, Plaintiffs contend that they never received these salary increases.

In 1988-89, Levy and Kleven again complained to the university vice-president about unfair treatment in salaries and raises, and were subsequently "awarded a partial adjustment for that year."

In 1990, Levy and Kleven complained to then university vice-president Bobby Wilson about Dean Douglas' unfair treatment regarding their salaries and raises. Levy subsequently received a salary adjustment.

Later in 1990, vice-president Wilson developed a comprehensive merit evaluation system.[2] The merit evaluation system required the individual faculty members to evaluate themselves on a point basis, and then submit their self-evaluations to another appointed faculty member for further review. Johnson, as associate dean of the law school, was chosen to assess law school faculty's self-evaluations and recommend overall point totals to the dean. The merit evaluations performed by Johnson formed the basis for the salary increases to be awarded by Dean Douglas.

Plaintiffs state that Johnson failed to notify Harrington

---

[2] Prior to the implementation of this system, the university did not have a uniform faculty evaluation system.

about the newly implemented self evaluation form, even though Johnson allegedly knew that Harrington was on sabbatical when the form was adopted. Harrington never submitted a self-evaluation form for the 1990-91 academic year. His failure to do so was considered when salary increase determinations were made.

Plaintiffs state that, for the 1990-91 academic year, "Johnson also lowered the points requested for all the white professors...and raised the points requested for every Black professor who used the identical form."

In 1991-92, Harrington was awarded "professor of the year" by all three student bar associations on campus. This same year, Harrington was allegedly awarded the lowest percentage salary increase of all full professors - 1%.

In 1991-92, Kleven received the "outstanding teacher of the year award" from Texas Southern University and was asked to be a speaker at the law school graduation. This same year, Johnson allegedly lowered Kleven's self-evaluation points because of insufficient scholarship. Johnson, however, admitted to never having read the scholarly work of Kleven.

Plaintiffs alleged that, by 1993, the disparity in salaries between the average white full professors and average African American full professors had grown to approximately $3,000 per year even though, on average, the white professors had allegedly eight years more longevity than the African American professors. Plaintiffs allege that Harrington, who had been a professor longer than any other, was ranked seventh in salary; Levy, who ranked

6

third in years, ranked ninth in salary; and Kleven, who tied Dean Douglas in years as a professor, ranked tenth in salary.

At the time of trial, Harrington's nine month salary was $102,046, Levy's nine-month salary was $98,297, and Kleven's nine month salary was $97,332. Harrington, Levy, and Kleven were among the ten highest paid faculty at the law school.

After filing a complaint with the Equal Employment Opportunity Commission, in 1993, Plaintiffs brought suit in federal court alleging violations of their due process rights under the Fifth and Fourteenth Amendments to the Constitution; violations of their civil rights under the Civil Rights Act of 1871, 42 U.S.C. § 1983; conspiracy to interfere with their civil rights under the Klu Klux Klan Act, 42 U.S.C. § 1985; racial discrimination in violation of equal protection under the Civil Rights Act of 1966, 42 U.S.C. § 1981; and violation of their right to free expression under the First, Fifth, and Fourteenth Amendments to the Constitution, as well as pendent state claims for breach of contract and intentional infliction of emotional distress.

At trial, the following issues were submitted to the jury: a § 1983 claim for retaliation in violation of Plaintiffs' right to free expression under the First Amendment; claims under § 1981 and Title VII for race discrimination; and a claim for violation of Plaintiffs' substantive due process rights.[3] The jury returned

_____

[3] Prior to trial, the magistrate judge ruled, *inter alia*, that Texas Southern University enjoys Eleventh Amendment immunity from suit as to Plaintiffs' § 1981 race discrimination and § 1983 free speech retaliation claims. The magistrate judge also held that Defendants are not liable in their individual capacities on

verdicts against Dean Douglas as to the § 1983 First Amendment claim, and against Johnson as to the § 1981 race discrimination claim. The jury also returned verdicts against both Dean Douglas and Johnson as to Plaintiffs' substantive due process claims. Defendants timely filed a renewed motion for judgment as a matter of law, which was denied by the magistrate judge.[4] The magistrate judge entered final judgment as follows:

1. Harrington was awarded $12,362 in compensatory damages and $27,000 in punitive damages from Dean Douglas, plus $4,301 in compensatory damages and $5,000 in punitive damages from Johnson.

2. Levy was awarded $20,320 in compensatory damages and $27,000 in punitive damages from Dean Douglas, plus $6,201 in compensatory damages and $5,000 in punitive damages from Johnson.

3. Kleven was awarded $23,285 in compensatory damages and $27,000 in punitive damages from Dean Douglas, plus $7,501 in compensatory damages and $5,000 in punitive damages from Johnson.

The magistrate judge additionally found, by a preponderance of the evidence, that "Plaintiffs are currently underpaid with respect to certain colleagues with comparable experience and qualifications." The magistrate judge found that "the underpayment is a result of illegal discrimination based on race, retaliation for the exercise of their first amendment rights and the arbitrary

_____

Plaintiffs' Title VII claim. The parties do not appeal these rulings, hence, we will not address them.

[4] Defendants had previously filed a motion for judgment as a matter of law prior to submission of the issues to the jury, as is required by FED. R. CIV. P. 50. The magistrate judge denied this motion, as well.

8

and capricious manner in which performance evaluations were made." The court ordered the following injunctive relief: (1) that Harrington's salary for the 1994-95 academic year be raised to $105,382 "in order to bring him into parity with Professor Otis King,"[5] and (2) that the salaries for Levy and Kleven be raised to $102,767 for the 1994-95 academic year to bring them into parity with the salary of Johnson. The magistrate judge awarded attorneys' fees and costs to Plaintiffs.

The Defendants timely filed the instant appeal.

## DISCUSSION

On appeal, Defendants challenge the jury's verdict as to Dean Douglas on the § 1983 First Amendment claim; Johnson on the § 1981 race discrimination claim; and both Dean Douglas and Johnson on Plaintiffs' substantive due process claims. We will address each issue in turn.

## I. Section 1983 - First Amendment

Defendants first argue that Plaintiffs have not suffered a constitutional deprivation under the First Amendment because Plaintiffs' speech did not involve matters of public concern, nor did Douglas' actions constitute an adverse employment decision. For the following reasons, we hold that Plaintiffs have failed to establish a § 1983 claim for free speech retaliation, and we

---

[5]  Otis King is a professor with seniority status.

reverse the jury's verdict as to this issue.

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." 42 U.S.C. § 1983. "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates." *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989). "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Id.* In this case, Plaintiffs claim that the free speech provision of the First Amendment provides the underlying constitutional violation.

To establish a § 1983 claim of retaliation for the exercise free speech, Plaintiffs must prove that: (1) Defendants were acting under color of state law; (2) Plaintiffs' speech activities were protected under the First Amendment; and (3) Plaintiffs' exercise of their protected right was a substantial or motivating factor in Defendants' actions. *Pierce v. Texas Dep't. of Crim. Justice Inst. Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994); *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 576, 50 L.Ed. 2d 471 (1977). We review *de novo* the legal question of whether Plaintiffs' allegations state a valid claim of retaliation. *Shultea v. Wood*, 27 F.3d 1112, 1118 (5th Cir. 1994).

The parties do not dispute on appeal that Defendant Douglas was acting under color of state law. Therefore, we must ask whether Plaintiffs' speech was protected under the First Amendment. To assert a retaliation claim cognizable under the First Amendment, a public employee must allege facts demonstrating that his speech involved a matter of public concern, *Shultea*, 27 F.3d at 1118, and that he "has suffered an adverse employment action for exercising [his] right to free speech." *Pierce*, 37 F.3d at 1149.

Assuming, without deciding, that the issues raised by Plaintiffs are matters of public concern, the critical questions are: (1) did Plaintiffs suffer an adverse employment action and, if so, (2) was such adverse employment action taken in retaliation for Plaintiffs' exercise of free speech. For the following reasons, we hold that Plaintiffs have failed to show that they suffered an adverse employment action.

"Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Id.* Many actions which merely have a chilling effect upon protected speech are not actionable. *Id.* Actions such as "decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures," while extremely important to the person who has dedicated his or her life to teaching, do not rise to the level of a constitutional deprivation. *Dorsett v. Bd. of Trustees for State Colleges & Universities*, 940 F.2d 121, 123 (5th Cir. 1991).

11

On appeal, Plaintiffs argue that they experienced the following adverse employment actions: Douglas evaluated Kleven's law school participation as being "counterproductive" and Douglas perennially discriminated against Plaintiffs when making merit-based salary increase determinations. For the following reasons, we hold that neither of these actions rise to the level of a constitutional deprivation.

First, assuming that Douglas did, in fact, criticize Kleven's participation as being counterproductive, Plaintiffs point to no case law (nor do we find any) which holds that an employer's criticism of an employee, without more, constitutes an actionable adverse employment action. In this case, the evidence is clear that no Plaintiff has been discharged or threatened with discharge; no Plaintiff has been demoted; no Plaintiff has been denied a promotion; and no Plaintiff suffered a reduction in pay. In fact, all Plaintiffs are tenured professors of law, having achieved the highest rank available at the law school. All Plaintiffs still teach at the law school and all Plaintiffs are among the law school's top earners. Regardless of the arguable merits behind this, or any criticism, mere criticisms do not give rise to a constitutional deprivation for purposes of the First Amendment. Accordingly, Plaintiffs did not suffer an actionable adverse employment action when Douglas criticized Kleven as being counterproductive.

Next, Plaintiffs argue that they experienced an adverse employment action when Douglas failed to award them certain merit

12

pay increases. For the purpose of this analysis, we assume, without deciding, that Plaintiffs actually qualified for a merit pay increase in some amount. The record is undisputed, however, that each Plaintiff did in fact receive, during each school year for which free speech retaliation is claimed, a merit pay increase; and that their claim is more precisely stated as "we were not awarded merit pay increases in the same amount as others or in the amount to which we think we were entitled." We find nothing in this record upon which a determination could be made that Douglas was obligated to give the same dollar amount or the same percentage increase to each professor to whom merit pay increases would be awarded; and the variations in the amounts or percentages of merit pay increases which he actually awarded were not significant. If Plaintiffs had received no merit pay increase at all or if the amount of such increase were so small as to be simply a token increase which was out of proportion to the merit pay increases granted to others, we might reach a different conclusion. But under the facts of this case we are persuaded that the merit pay increases actually awarded to Plaintiffs cannot be considered as an adverse employment action. As this Court has previously stated in **Dorsett**, any harm resulting from decisions concerning "pay increases" does not rise to the level of a constitutional deprivation.[6] **Dorsett**, 940 F.2d at 124. After carefully reviewing

---

[6] In **Dorsett**, we stated:

> The continuing retaliatory actions alleged by Dorsett appear to be nothing more than decisions concerning teaching assignments, *pay*

13

the record and the case law, we hold that Plaintiffs' proof of adverse employment action in this case amounts to nothing more than a dispute over the quantum of pay increases. Accordingly, the Plaintiffs have not proved an actionable adverse employment activity.

Having failed to establish a First Amendment violation, Plaintiffs failed to prove a case for a § 1983 claim of retaliation for the exercise of free speech. For these reasons, the magistrate judge erred in failing to grant Defendants' motion for judgment as a matter of law, and the judgment of the magistrate court is reversed as to this issue.

## II. Sufficiency of the Evidence

*Standard of Review*

Defendants next challenge the sufficiency of the evidence as to Plaintiffs' claims that Johnson discriminated against them on

---

> *increases*, administrative matters, and departmental procedures....
>
> In public schools and universities across this nation, interfaculty disputes arise daily over teaching assignments, room assignments, administrative duties, classroom equipment, teacher recognition, and a host of other relatively trivial matters. A federal court is simply not the appropriate forum in which to seek redress for such harms.
>
> We have neither the competency nor the resources to undertake to micro manage the administration of thousands of state educational institutions.

**Dorsett**, 940 F.2d at 123-24 (emphasis added) (internal citations omitted).

the basis of their race in violation of § 1981, and that Johnson and Douglas arbitrarily and capriciously deprived them of merit pay increases in violation of the Fourteenth Amendment.[7] "A motion for judgment as a matter of law ... in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Hiltgen v. Sumral*, 47 F.3d 695, 699 (5th Cir. 1995). "On review of the district court's denial of such a motion, the appellate court uses the same standard to review the verdict that the district court used in first passing on the motion." *Id.* A jury verdict must be upheld unless "there is no legally sufficient evidentiary basis for a reasonable jury to find" as the jury did. FED. R. CIV. P. 50(a)(1). "This court has consistently applied this standard to show appropriate deference for the jury's determination." *Hiltgen*, 47 F.3d at 700. "A jury may draw reasonable inferences from the evidence, and those inferences may constitute sufficient proof to support a verdict." *Id.* "On appeal we are bound to view the evidence and all reasonable inferences in the light most favorable to the jury's determination." *Id.* "Even though we might have reached a different conclusion if we had been the trier of fact, we are not free to reweigh the evidence or to re-evaluate credibility of witnesses." *Id.* Within this broad standard of deference, we "must focus on whether a reasonable trier

---

[7] The parties do not dispute on appeal that Defendants properly preserved these issues for appeal by asserting a timely motion for judgment as a matter of law at the close of the case.

15

of fact could have concluded as the jury did." *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 149 (5th Cir. 1995), *cert. denied*, 116 S. Ct. 709 (1996).

*Section 1981 Race Discrimination*

Section 1981 provides that all persons in the United States shall have the same contractual rights as white citizens.[8] 42 U.S.C. § 1981(a); *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996). "Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII." *LaPierre*, 86 F.3d at 448 n.2. Thus, "to succeed on a claim of intentional discrimination under Title VII ... or Section 1981, a plaintiff must first prove a prima facie case of discrimination." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). However, "when a case has been tried on the merits, a reviewing appellate court need not address the sufficiency of plaintiff's prima facie case, and may instead proceed directly to the ultimate question of whether plaintiff has

---

[8]  In the Civil Rights Act of 1991, enacted November 21, 1991, Congress legislatively reversed the Supreme Court case of *Patterson v. McLean Credit Union*, 109 S. Ct. 2363 (1989), which held that section 1981's guarantee of the right to make contracts did not extend to conduct occurring after the employer-employee contract was formed. Section 1981 now specifically states that, "[f]or purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions  of the contractual relationship." 42 U.S.C. § 1981(b); *National Ass'n. of Gov't Employees, Et Al. v. City Public Serv. Bd. of San Antonio, Et Al.*, 40 F.3d 698, 712 (5th Cir. 1994).

16

produced sufficient evidence for a jury to find that discrimination has occurred." *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 122 (5th Cir. 1992). In other words, the focus "then shifts to the ultimate question of whether the defendant intentionally discriminated against the plaintiff." *LaPierre*, 86 F.3d at 448.

In showing intentional employment discrimination, a plaintiff need not come forward with direct evidence of discriminatory intent. *LaPierre*, 86 F.3d at 449; *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (en banc). Direct evidence of an employer's discriminatory intent is rare; therefore, plaintiffs must ordinarily prove their claims through circumstantial evidence. *Id.* A plaintiff may establish circumstantial evidence of intentional discrimination by demonstrating that a defendant's articulated nondiscriminatory rationale was pretextual. *McDonnell Douglas Corp. v. Green*, 93 S. Ct. 1817, 1825 (1973); *Texas Dept. of Community Affairs v. Burdine*, 101 S. Ct. 1089, 1093 (1981). A plaintiff may demonstrate pretext either by showing that a discriminatory motive more likely motivated the employer, or that the employer's explanation is unworthy of credence. *Amburgey v. Corhart Refractories Corp. Inc.*, 936 F.2d 805, 813 (5th Cir. 1991).

At trial, Plaintiffs offered evidence showing that Johnson intentionally or recklessly failed to give white professors equal credit and consideration for their scholarship, research, community service, and publications. Plaintiffs offered evidence showing that this discriminatory policy caused black professors to receive higher merit pay increases than those received by their white

17

counterparts.  Plaintiffs also offered the testimony of faculty members who stated that a racially discriminatory environment existed at the law school and that Johnson's treatment of the Plaintiffs could only be attributed to such discrimination.

After thoroughly reviewing the relevant portions of the record, as well as the arguments of the parties, we hold that Plaintiffs offered sufficient evidence to allow a reasonable jury to conclude that Johnson intentionally discriminated against Plaintiffs on the basis of race when he evaluated them for merit pay increases.  While the evidence offered by Plaintiffs is purely circumstantial, such evidence, if believed by the jury, can give rise to a claim for intentional race discrimination under § 1981. For these reasons, we find no reversible error and the judgment of the magistrate judge on this issue is affirmed.

*Substantive Due Process*

Finally, Defendants argue that the evidence presented at trial does not support the jury's finding that Johnson and Douglas violated Defendants' substantive due process rights under the Fourteenth Amendment.  "To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." ***Moulton v. City of Beaumont***, 991 F.2d 227, 230 (5th Cir. 1993). "If state action is so arbitrary and capricious as to

18

be irrational, its infringement on a constitutionally protected interest may violate substantive due process rights." *Neuwirth v. Louisiana State Bd. of Dentistry*, 845 F.2d 553, 558 (5th Cir. 1988).

On appeal, Defendants do not dispute that Plaintiffs had a property interest in a rational application of the university's merit pay policy. Accordingly, we need not address this issue. Assuming, arguendo, that Plaintiffs did have a property interest in merit pay increases, we must ask whether Johnson and Douglas awarded such pay increases in an arbitrary and capricious manner. *See Spuler v. Pickar*, 958 F.2d 103, 107 (5th Cir. 1992) (Assuming plaintiff had a property interest, the only substantive process due was the exercise of professional judgment, in a non-arbitrary and non-capricious fashion). After thoroughly and carefully reviewing the briefs of the parties and the relevant portions of the record, we hold that a jury could reasonably conclude that Johnson and Douglas acted in an arbitrary and capricious manner in their merit pay evaluations. Thus, the judgment of the magistrate judge as to this issue is affirmed.


## CONCLUSION

For the foregoing reasons, we reverse the judgment of the magistrate judge as to the issue of § 1983 retaliatory discharge under the First Amendment; affirm the judgment of the magistrate judge as to the issue of § 1981 race discrimination; and affirm the judgment of the magistrate judge as to the issue of substantive due

19

process under the Fourteenth Amendment.  To the extent that the final judgment of the magistrate judge is not modified by this order, it is, in all things, affirmed.[9]

This case is remanded to the magistrate judge for modification of the final judgment in accordance with this opinion.

---

[9]  Defendants have not appealed the propriety of the injunctive relief awarded by the magistrate judge, or the punitive damages awarded by the jury on the issue of race discrimination. Accordingly, we express no opinion as to these aspects of the judgment.  The issue of attorneys' fees shall be determined by the magistrate judge in a manner consistent with this opinion.