Michael MADISON, Plaintiff,

v.

HOUSTON INDEPENDENT SCHOOL DISTRICT; Board of Education for the Houston Independent School District and Dr. Rod Paige, Defendants.

Civil Action No. 97–3625.

United States District Court,
S.D. Texas,
Houston Division.

April 22, 1999.

Laurence Wade Watts, Watts and Associates, Houston, TX, for Michael Madison.

David B. Hodgins, Marla A. Moore, Bracewell & Patterson, Houston, TX, for Houston Independent School District, Board of Education for Hisd, Dr. Rod Paige.

## ORDER

HITTNER, District Judge.

Pending before the Court is the Motion for Summary Judgment filed by Defendants. After considering the motion, the submissions, and the applicable law, the Court has determined that the motion should be granted.

This suit arises from the termination of Plaintiff Michael Madison ("Madison") from his position as a special education teacher at Attucks Middle School by the Board of Education ("the Board") of the Houston Independent School District ("HISD" or "the District"). Plaintiff claims that his termination was a result of retaliation for his release of videotapes of Attucks Middle School discipline problems to the media. Defendants claim that the Board terminated Madison for striking a child in his Behavioral Adjustment Class. Plaintiff has asserted claims of violations of the First Amendment, Fourteenth Amendment, the corresponding state constitutional claims, and breach of contract.

The District's investigation of Plaintiff Madison began on April 21, 1994, when an Attucks Middle School student, Joshua C., and his mother reported Madison to Attucks' principal, Frank Thomas ("Thomas") for hitting Joshua with a paddle in the course of disciplining him. Upon examining Joshua, the principal discovered a dark bruise on the student's chest that was approximately three inches long. Def.'s Mot. for Summ.J.Ex. B. Principal Thomas questioned Madison about the incident that same day. Def.'s Mot. for Summ. J.Ex. A. At that time, Madison did not deny hitting the student and, upon subsequent questioning, produced a paddle from his classroom. Principal Thomas confiscated the paddle and began an investigation pursuant to the District's policy.

Thomas' investigation resulted in the retrieval of numerous statements, including statements from Madison, several student witnesses to the incident, and Joshua. Thomas also reviewed Madison's personnel filed which revealed three former admonishments from other principals from investigations for improper disciplining of students. Principal Thomas reviewed his accumulated evidence and determined that Joshua's claim could be supported. Accordingly, the principal submitted a written report to his supervisor, Assistant Superintendent Joe Drayton, and recommended that Madison's teaching contract be terminated.

On June 9, 1994, Dr. Rod Paige ("Paige"), the District's Superintendent, sent Madison notice of his potential termination via letter. Def.s' Mot. for Summ. J.Exh.P. Paige informed Madison that Madison was in violation of the District's corporal punishment policy and that the basis of the termination was for improperly disciplining a student with a paddle. Paige also informed Madison that he could contest the potential termination and request an evidentiary hearing.

Madison requested an evidentiary hearing from the District to address his potential termination. The four day evidentiary hearing took place on November 10, 1994, before an independent hearing officer. During this hearing, Madison claimed that his termination was a result of retaliation by the school for alerting the news media in the fall of 1993 about problems within the Attucks Middle School. The independent hearing officer determined that the District had not provided sufficient evidence that Madison struck Joshua C. in the course of disciplining him and recommended that Madison be reinstated.

The District appealed this decision to the Board of Education which analyzed and discussed the Madison incident. Although Madison had asserted retaliation as the reason for his termination in the lower hearing, he did not make this same assertion during the Board of Education evaluation. Throughout the Board's discussion of Madison's employment, the Board never mentioned the videotapes that Madison provided to the media, but instead focused on the discipline used for Joshua C. and the fact that the child claimed that he had been struck in the chest with a paddle. The Board ultimately concluded that Madison's contract should be terminated and therefore reversed the hearing officer's recommendation.

Madison claims that the District wrongfully terminated him in violation of the First Amendment, Fourteenth Amendment, and claims under the Texas Constitution. Madison also claims that the District breached its employment contract with him pursuant to Texas common law.

*Summary Judgment Standard*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See also State Farm Life Ins. Co. v. Gutterman,* 896 F.2d 116, 118 (5th Cir.1990). After reviewing the submissions by the parties, the Court determines that there is no genuine issue of material fact to permit Madison's claims to survive summary judgment.

*First Amendment Claim*

Madison brings his First Amendment and Fourteenth Amendment claims pursuant to title 42 U.S.C. § 1983. Section 1983 provides that any person, under color of law, who deprives another person of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." While § 1983 does not provide any substantive rights, it provides the vehicle for individuals who seek restitution for violations of certain Constitutional rights. *Harrington v. Harris,* 118 F.3d 359, 365 (5th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 603, 139 L.Ed.2d 491 (1997). "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates. Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Johnston v. Harris Co. Flood Control Dist.,* 869 F.2d 1565, 1573 (5th Cir.1989), *cert. denied,* 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990).

■ Madison claims that his First Amendment rights were violated when the District retaliated against him for providing videotapes of the school to the media that showed the school in a negative light. To prove his claim of retaliation, Plaintiff must demonstrate, "(1) Defendants were acting under color of state law; (2) Plaintiff's speech activities were protected under the First Amendment; and (3) Plaintiff's exercise of [his] protected right was a substantial or motivating factor in Defendants' action." *Harrington,* 118 F.3d at

365 (citing *Pierce v. Texas Dept. of Criminal Justice Inst. Div.,* 37 F.3d 1146, 1149 (5th Cir.1994), *cert. denied,* 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995); *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). In the instant case, the parties do not dispute that Defendants, as a public, state supported school system, were acting under color of state law. Furthermore, the parties do not dispute that the Plaintiff's speech activities, informing the media of the inherent problems with Attucks Middle School, were protected under the First Amendment. The crux of the argument rests on the third element of proof: whether Madison's exercise of free speech was a substantial or motivating factor for the School Board's termination of his teaching position.

■ The Supreme Court has provided a burden shifting analysis for determining whether a plaintiff's exercise of free speech was a motivating factor in the Defendants' decision to terminate its employee. *Id.* The Fifth Circuit delineated the burden-shifting analysis in *Coughlin v. Lee,* 946 F.2d 1152, 1157 (5th Cir.1991), stating,

> *Doyle* mandates that the employee must demonstrate that his protected conduct was a substantial motivating factor in his discharge. The employer then has the burden of showing a legitimate reason for which it would have discharged the employee even in the absence of his protected conduct. The employee can refute that showing by evidence that his employer's ostensible explanation for the discharge is merely pretextual.

Madison has indicated he provided several news stations, including CNN, with videotaped negative coverage of the Attucks Middle School. The news story depicted Attucks Middle School students participating in drug use, sex, and violent acts while on school property. Madison claims that, after the broadcast of this news story, teachers and faculty began treating him

differently. Specifically, Madison cites an incident where he was missing his computer and then later found it in a janitorial office. Madison has also provided several hearsay statements made by teachers that are inadmissible for the purposes of summary judgment evidence.

The District has provided sufficient evidence to demonstrate the reason that it terminated Madison was because the District believed that he had struck a child across the chest with a paddle that he admittedly owned. Throughout the course of the School Board's discussion, there was no mention of the taping incident that occurred nine months prior to the discipline charges. Instead, the discussion involving Madison focused solely on the discipline the District believed Madison used with Joshua C., and highlights the evidence that the independent judge did not consider in her recommendation for denying the termination of Madison.

Madison claims that the District's reason for terminating his contract is pretextual. Madison states that, although the District cites the discipline incident for its grounds for termination, the true reason for the termination was retaliation for Madison's statements to the news media made during the summer of 1993. Madison first claims that the principal stated that he was going to "get" whomever sent the videotapes to the media. Plaintiff, however, later recanted this statement in a subsequent deposition, admitting that Thomas had not made the statement. Def.s' Reply to Pl.'s Res. to Mot .Summ.J. Ex A p. 518. Plaintiff also supplies the Court with various out-of-court statements which are inadmissible for the purposes of the motion for summary judgment. At most, Plaintiff supplies his own belief of retaliation as the main thrust in his pretext argument. A plaintiff's subjective belief of retaliation, however, is insufficient to prove First Amendment retaliation. *Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 324 (5th Cir. 1998).

Furthermore, Plaintiff argues .that the Court should apply the broadened application of job retaliation as applied to Title VII cases by the Supreme Court in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998). In *Burlington*, the Court determined that an employer's retaliation against an employee for pursuing Title VII relief could be evidenced in a "tangible employment action." *Id.* "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* While this broadened definition of retaliation has not been applied to instances of First Amendment retaliation, this Court recognizes the potential overlap of employment and First Amendment claims. *See e.g., Harrington*, 118 F.3d at 359; *Weller v. Citation Oil and ·Gas Corp.*, 84 F.3d 191 (5th Cir.1996), *cert. denied*, 519 U.S. 1055, 117 S.Ct. 682, 136 L.Ed.2d 607 (1997); *DeAngelis v. El Paso Mun. Police Officers Assoc.*, 51 F.3d 591 (5th Cir.), *cert. denied*, 516 U.S. 974, 116 S.Ct. 473, 133 L.Ed.2d 403 (1995); *Pierce*, 37 F.3d at 1146.

Although the Supreme Court has alluded to the possible application of a broader retaliation standard for First Amendment retaliation cases in *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 2737 n. 8, 111 L.Ed.2d 52 (1990), the Fifth Circuit, in *Pierce*, 37 F.3d at 1149 n. 1, declined to "read the Supreme Court's dicta literally." Instead, the Fifth Circuit defined an adverse employment action as those actions constituting "discharges, demotions, refusals to hire, refusals to promote, and reprimands." 118 F.3d at 1149. Although the application of the broader *Burlington* retaliation could apply to a First Amendment instance, the Court determines that Plaintiff has not alleged facts that could support a claim under the broader standard as none of the facts alleged in this case demonstrated a "signifi-

cant change in benefits." As Plaintiff has not satisfied his burden of proving that the School Board's reasons for terminating his contract were pretextual, the Court determines that the claim of retaliation for the exercise of First Amendment rights should be dismissed on summary judgment.

### Qualified Immunity for Dr. Paige

■ As Plaintiff has sued Paige in his individual capacity for the District's termination of Madison, the Court shall address the application of qualified immunity for individual defendants in § 1983 actions. Under the doctrine of qualified immunity, governmental employees, when sued in their individual capacities, are immune from suit when their actions are objectively reasonable as measured by reference to clearly established law. *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994). The law is deemed clearly established if the contours of a right asserted are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Id.* (citing *White v. Taylor*, 959 F.2d 539, 544 (5th Cir.1992)). If reasonable public officials could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. Id. Whether the act complained of by the plaintiff violates clearly established rights is essentially a legal question. *Id.*

A two-step process is used by the court in analyzing qualified immunity. First, the court must determine whether the plaintiff has asserted a violation of a constitutional right. *White*, 959 F.2d at 544. Then, the court must determine whether the summary judgment evidence entitles the defendant to qualified immunity. *Johnston*, 14 F.3d at 1060. Although Plaintiff has stated a First Amendment claim against Paige, the Superintendent of the H.I.S.D. school system, he has not alleged any factual basis to support a violation by Paige of Plaintiff's First Amendment rights. At most, Madison provides statements made by Thomas, the principal of Attucks Middle School. As Plaintiff has provided no factual basis to support his

claim against Dr. Paige as an individual, the Court finds that this claim should be dismissed.

### Fourteenth Amendment Claim

■ Plaintiff also claims that the District violated his Fourteenth Amendment rights when it failed to follow the administrative guidelines for the termination of a teaching contract. The Supreme Court has determined that procedural due process requires a showing of a violation of Plaintiff's life, liberty, or property interest. The District, as a state actor, terminated Plaintiff's contract after multiple hearings. Pursuant to *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Plaintiff must demonstrate a "legitimate claim of entitlement" to the benefit taken away by the state. Property interests "are defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577, 92 S.Ct. 2701. Plaintiff claims that the District's continuing contract with him supports a finding of a property interest. As Defendants do not dispute Plaintiff's legitimate property interest, the Court will analyze Plaintiff's claim based on the grounds that he had a legitimate property interest in his employment with the District.

Even if Plaintiff has a legitimate interest in his position with the District, he has not demonstrated insufficient process in the decision to terminate him. " 'Once it is determined that a public employee has a protected interest in continued employment, the Constitution requires that he be given notice and an opportunity to be heard prior to termination.' " *Samuel v. Holmes*, 138 F.3d 173, 177 (5th Cir.1998) (quoting *Jones v. Orleans Parish Sch. Bd.*, 679 F.2d 32, 36 (5th Cir.), *modified on other grounds*, 688 F.2d 342 (5th Cir. 1982)). Furthermore, this Circuit has consistently held that mere failure to follow school district administration guidelines is not sufficient to demonstrate a violation of

the Fourteenth Amendment. *Giovanni v. Lynn,* 48 F.3d 908 (5th Cir.), *cert. denied,* 516 U.S. 860, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995).

Plaintiff received ample notice of the District's intention to terminate him. He requested an administrative hearing and received a four day hearing before an independent hearing officer. During the hearing, Plaintiff introduced witnesses, produced relevant evidence, and presented a full case to the independent hearing officer. The District also notified Plaintiff of its intent to appeal the ruling of the administrative judge. During the appeal, Plaintiff had representation and was fully heard. While Plaintiff claims that the District did not provide ample process because of its failure to follow simple guidelines, "[m]ere failure to accord the procedural protections called for by state law or regulation does not itself amount to a denial of due process." *Id.* at 912. Accordingly, despite the failure of the District to follow its ordinary guidelines, the Defendants have demonstrated that Plaintiff received sufficient notice and process for his termination.

### Qualified Immunity for Dr. Paige

As discussed, *supra,* the Plaintiff has not alleged specific facts that indicate that Dr. Paige, as an individual, deprived him of his Fourteenth Amendment rights. Accordingly, the Court determines that qualified immunity applies to Defendant Paige in his individual capacity and the claims of Fourteenth Amendment violations against Paige should be dismissed.

### State Law Constitutional Claims

■ Plaintiff has also asserted claims pursuant to the Texas Constitution. Specifically, Plaintiff has stated claims based on Article 1, Section 19 (Due Course of Law) and Article 1, Section 7 of the Texas Constitution (Freedom of Speech). The state and federal courts have determined that the application of federal law is appropriate to these state claims. *See Carey v. Aldine Independent School District,* 996

F.Supp. 641, 646 (S.D.Tex.1998) (applying federal law to state law freedom of speech claim); *University of Texas Medical School at Houston v. Than,* 901 S.W.2d 926, 929 (Tex.1995) (applying federal law to state law due course of law claim). As the Plaintiff's state law claims are identical to his federal law claims, discussed supra, the Court determines that, based upon the foregoing reasons, the state law claims should be dismissed as well.

### Breach of Contract

■ Plaintiff has also brought a breach of contract claim in which he states that Defendants breached their contract with him when they terminated him. Defendants, relying on *Grounds v. Tolar Independent School Dist.,* 707 S.W.2d 889, 892 (Tex.1986), argue that Plaintiff has not exhausted all of his administrative remedies and therefore, his claim cannot be considered. Plaintiff argues that the exception to the exhaustion doctrine applies in that the administrative system is biased against him and therefore he cannot receive adequate relief. Plaintiff cites *Gibson v. Waco Independent School District,* 971 S.W.2d 199, 201 (Tex.App.—Waco 1998, pet. filed), to support his position. The court in *Gibson* held that a plaintiff could evade the exhaustion of administrative remedies by demonstrating that one of the exceptions applied to his case. These exceptions include,

1) where an injunction is sought and irreparable harm would result;

2) where the administrative agency cannot grant the requested relief;

3) where the school board has acted without authority; and

4) where constitutional issues are involved.

*Id.* This argument, however, does not permit Plaintiff to avoid the administrative process; he has not applied for an injunction and an administrative agency could grant the requested relief. As Plaintiff has appealed the Board's decision to termi-

nate his contract to the Commissioner of Education (an administrative agency that could grant relief) and that appeal is currently pending, the Court determines that it is without jurisdiction to consider Plaintiff's breach of contract claim. Accordingly, the Court determines that this claim should also be dismissed. Based upon the foregoing, the Court hereby

ORDERS that the Motion for Summary Judgment is GRANTED.