[NOT FOR PUBLICATION-NOT TO BE CITED AS PRECEDENT]

# United States Court of Appeals
## For the First Circuit

---

No. 99-1755

ANTHONY P. MARTIN,

Plaintiff, Appellant,

v.

WELLESLEY COLLEGE,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

---

Before

Torruella, Chief Judge,
Coffin, Senior Circuit Judge,
and Boudin, Circuit Judge.

---

Winston Kendall for appellant.
Ana M. Francisco with whom William L. Patton was on brief for appellee.

---

March 9, 2000

---

**Per curiam.** Appellant Anthony Martin, a tenured professor at Wellesley College, claims that he was denied a merit pay increase because he is black and in retaliation for his protests over racist practices by the school and its faculty. The district court concluded that Martin failed to produce evidence that could support a finding of racial discrimination, and it consequently granted summary judgment for Wellesley. We affirm for the reasons articulated by the district court and add only the following comments.

Martin emphasizes his strengths in the categories deemed relevant by Wellesley in determining merit increases, and he urges comparisons with other faculty members whose records in support of such increases were far less substantial than his own. He asserts that the quantity of his writing and other work and his superior student evaluations show such a high performance level that the only plausible reason for his being the sole eligible professor not to receive merit pay is his race. This argument ignores, however, that the college's rationale was that -- notwithstanding the substance and quantity of other materials in his file -- the content and tone of his work related to The Secret Relationship "warrant a statement of disapproval and concern and certainly do not warrant a merit increase." See Letter of President Diana Chapman Walsh. Thus,

-3-

discrepancies between the quantitative strength of his record and those of other faculty members do not demonstrate pretext in the college's judgment that the quality of Martin's work had deteriorated, as evidenced by The Jewish Onslaught and related materials.

We appreciate the difficulty faced by a plaintiff who seeks to prove discrimination when the evidence contains no "smoking gun," and we recognize the subtlety in appellant's argument that racism is implicit in the backlash against his work during the relevant time period. The record, however, contains no evidence that could support a jury finding that the denial of merit pay stemmed from racial animus rather than from the college's stated reasons relating to the tone and approach of his scholarship. The opinions of plaintiff's expert witnesses that the college's actions were racially motivated are presumptions themselves based primarily on his race and do not strengthen his discrimination claim, particularly in the face of the substantial evidence of widespread distress about the quality of plaintiff's work among his colleagues at Wellesley. A fact finder would have to engage in wholly unsubstantiated speculation to conclude that the college's asserted reason for its action was pretextual and that plaintiff's race was the true reason for denying the raise. Liability may not be premised on

-4-

conjecture alone.  On this record, therefore, the defendants were entitled to summary judgment.[*]

Affirmed.

_____

[*] The widespread concern expressed about plaintiff's more recent scholarship among his colleagues at Wellesley is a significant factual difference distinguishing this case from Harrington v. Harris, 118 F.3d 359 (5th Cir. 1997), which was emphasized by plaintiff at oral argument.  In Harrington, the plaintiffs, who were white  professors at a predominantly black law school, showed not only that defendants "intentionally or recklessly failed to give white professors equal credit and consideration for their scholarship, research, community service, and publications," id. at 368, but also offered testimony from other faculty members stating that a racially discriminatory environment existed at the school, see id.  The plaintiffs in Harrington also were able to demonstrate consistently adverse treatment of white professors, strengthening the inference that discrimination rather than individual performance motivated the disparate actions.