IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-20502
c/w 98-20123
_____


EUGENE M. DECKER, III, Dr.,

Plaintiff-Appellant,

versus

THE UNIVERSITY OF HOUSTON;
CLAUDINE GIACCHETTI, Dr.;
JULIAN OLIVARES, Dr.; JAMES PIPKIN, Dr.,

Defendants-Appellees.
_____

Appeals from the United District Court for the
Southern District of Texas
(H-96-CV-1672)
_____

September 15, 1998

Before GARWOOD, JOLLY, and HIGGINBOTHAM, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]


The plaintiff-appellant, a tenured professor at the University

of Houston, appeals the district court's entry of summary judgment

in the defendants' favor, arguing that the district court

erroneously dismissed (1) his First Amendment and Texas

Whistleblower Act claims as barred by the statute of limitations,

(2) his defamation claim on the basis of qualified privilege, and

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

(3) his due process and intentional infliction of emotional distress claims.

This appeal also presents the question whether a public employee's cause of action for employment discrimination may be brought under Title II of the Americans with Disabilities Act ("ADA") and, if so, whether public employees must exhaust administrative remedies before seeking judicial redress. We affirm the judgment as a matter of law without deciding the questions of whether a public employee may bring a claim for employment discrimination under Title II of the ADA or whether plaintiffs seeking such relief are bound by the exhaustion requirement of the administrative regime applicable to claims for discrimination under Title I.

I

Eugene Decker is a tenured[1] associate professor at the University of Houston where he has taught for nearly thirty years. As a young man, he battled Hodgkins disease with extensive radiation therapy that left his larynx and jaw severely damaged. As a result, he suffers from certain debilitating symptoms and has been advised by his doctor not to teach consecutive classes without a brief respite between lectures. The defendants[2] were made aware

---

[1]Decker first received tenure in 1973 in the French Department and later in the Department of Modern and Classical Languages after a 1994 consolidation.

[2]The defendants include the University of Houston; Dr. Claudine Giacchetti, the administration's appointee to the Faculty

of Decker's limitations and previously had accommodated his request with respect to the scheduling of his courses.

In 1986, Decker learned of an alleged sham set up by the defendants to obtain funding from the State.[3]  Decker protested the practice for several years, but it was not until May 1993 that he publicly complained to the state auditor.  According to Decker, the discrimination and retaliation began soon afterwards.  The defendants purportedly plotted that Decker would receive low merit evaluations[4] and that the evaluations would, in turn, adversely affect salary and promotion decisions.  In furtherance of this objective, Dr. Olivares sent Decker an allegedly defamatory memorandum that Olivares subsequently published to Drs. Pipkin and Giacchetti.  In addition, the defendants assigned Decker consecutive courses to teach despite his requests for reasonable scheduling adjustments.  The subsequent workload (and an internally

---

Personnel Committee--the committee that reviews faculty performances for merit evaluations; Dr. Julian Olivares, Chair of the Department of Modern and Classical Languages; and Dr. James Pipkin, at the time the Associate Dean or Dean of the College who supervised the graduate program.

[3]The State provides funds to the University of Houston under a formula premised on the number and level of classes taught. Graduate courses generate more funds than do undergraduate classes. The graduate program offers "paper courses" to students who wish to participate in these independent study courses.  According to Decker, however, these courses never meet and the students perform no work.

[4]The merit rating system was as follows: "1" equaled "unsatisfactory"; "2" equaled "adequate"; "3" equaled "merit"; and "4" equaled "special merit."

hemorrhaging tumor) caused Decker to take medical leave for part of the Spring 1995 semester, the Fall 1995 semester, and the Spring 1996 semester.  Decker filed suit on May 24, 1996.

## II

Decker presented various theories of recovery in his complaint.  He alleged that the defendants violated the First Amendment and the Texas Whistleblower Act, respectively, by retaliating against him after he publicly spoke out about his concern with the University's practice of offering "paper courses." Decker further alleged that the defendants violated the ADA by refusing reasonably to accommodate his physical limitations.  He alleged that the defendants violated his due process rights, that they defamed him, and that they intentionally inflicted upon him emotional distress.[5]  In due course, the defendants filed a motion for summary judgment that the district court granted in all respects.  Decker now appeals.

## III

Our standard of review is well established.  We review a district court's grant of summary judgment de novo, applying the same standard as would the district court.  Melton v. Teachers Ins. & Annuity Ass'n of Am., 114 F.3d 557, 559 (5th Cir. 1997); Estate of Bonner v. United States, 84 F.3d 196 (5th Cir. 1996).  Summary

---

[5]Decker also sued for negligent infliction of emotional distress, but he has failed to appeal the dismissal of this claim and it is not before us.

4

judgment is proper where the pleadings and summary judgment evidence present no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). A factual dispute will preclude an award of summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). When ruling on a motion for summary judgment, the inferences to be reasonably drawn from the underlying facts in the record must be viewed in the light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio, 106 S.Ct. 1348, 1356 (1986). The court may not weigh the evidence nor make credibility determinations. Anderson, 106 S.Ct. at 2511.

### A

Decker first challenges the district court's dismissal of his First Amendment claim on statute of limitations grounds. Federal courts look to the applicable statute of limitations of the state in which they are sitting for claims brought under 42 U.S.C. § 1983. Frazier v. Garrison I.S.D., 980 F.2d 1514, 1521 (5th Cir. 1993) (citing Wilson v. Garcia, 471 U.S. 261, 276 (1985); Johnson v. Railway Express Agency, 421 U.S. 454, 462 (1975)). The parties do not dispute that the Texas two-year limitations period applies to Decker's constitutional claim. See Piotrowski v. City of Houston, 51 F.3d 512, 515 n.5 (5th Cir. 1995); Helton v. Clements, 832 F.2d 332, 334 (5th Cir. 1987); Tex.Civ.Prac.& Rem. Code Ann.

5

§ 16.003 (Vernon 1986) ("A person must bring suit for . . . personal injury . . . not later than two years after the day the cause of action accrues.").

Under Texas law, "accrual occurs on the date 'the plaintiff first becomes entitled to sue the defendant based upon a legal wrong attributed to the latter,' even if the plaintiff is unaware of the injury." Vaught v. Showa Denko K.K., 107 F.3d 1137, 1140 (5th Cir. 1997) (quoting Zidell v. Bird, 692 S.W.2d 550, 554 (Tex.Ct.App. 1985)). The limitations period thus begins to run when the claimant "knows or has reason to know of the injury which is the basis for the action." Kline v. North Tex. State Univ., 782 F.2d 1229, 1232 (5th Cir. 1986).

The district court held that the statute of limitations began to run with respect to Decker's cause of action after March 20, 1986, when he first began to suspect that he was experiencing retaliation with respect to his salary and that he thus forfeited his right to bring this cause of action after the expiration of two years. Because of the difficult questions presented by attempting properly to apply the statute of limitations to the several events at issue, we will avoid wrestling with this matter; instead we will lean on the rule that we may uphold the district court's decision if there appears in the record any other basis for the proper dismissal of this claim. Bramblett v. C.I.R., 960 F.2d 526, 530 (5th Cir. 1992). We will assume that the allegations are timely and examine the underlying merits of Decker's claim.

6

To establish a prima facie case of retaliation actionable under the First Amendment, a plaintiff must prove that: (1) the defendants were acting under color of state law; (2) the speech activities in question were protected under the First Amendment; and (3) the plaintiff's exercise of his protected rights was a substantial or motivating factor in the defendants' actions. Harrington v. Harris, 118 F.3d 359, 365 (5th Cir. 1997); Pierce v. Texas Dep't of Crim. Justice, 37 F.3d 1146, 1149 (5th Cir. 1994). The parties do not dispute the plaintiff's establishment of the first two factors.

Decker must demonstrate, however, that he "suffered an adverse employment action for exercising [his] right to free speech." Pierce, 37 F.3d at 1149. This court on numerous occasions has explicated what actions constitute decisions actionable as retaliation. See Mattern v. Eastman Kodak Co., 104 F.3d 702, 707-08 (5th Cir. 1997) (excluding from the definition of an adverse employment action disciplinary filings, supervisor's reprimands--"anything which might jeopardize employment in the future"); Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995)(holding Title VII protects against retaliation with respect to ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating). "Not every negative employment decision or event is an adverse employment action that can give rise to a discrimination or retaliation cause of action under section 1983."

<u>Southard v. Texas Board of Crim. Justice</u>, 114 F.3d 539, 555 (5th Cir. 1997).

Decker complains of receiving two low merit evaluation ratings and of Olivares's publication of his allegedly defamatory memorandum.[6] These decisions had only a tangential effect, if that, on Decker's employment and fail to give rise to a cause of action for retaliation. <u>See</u> <u>Harrington</u>, 118 F.3d at 365 ("Many actions which merely have a chilling effect upon protected speech are not actionable."). The defendants' actions of which Decker complains were not ultimate employment decisions. In fact, Decker remains a fully tenured faculty member. "Actions such as 'decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures,' while extremely important to the person who has dedicated his or her life to teaching, do not rise to the level of a constitutional deprivation." <u>Id.</u> (quoting <u>Dorsett v. Board of Trustees for State Colleges & Univs.</u>, 940 F.2d 121, 123 (5th Cir. 1991)); <u>Mattern</u>, 104 F.3d at 708 (noting missed pay increase does not constitute ultimate employment decision). We therefore affirm the district court's dismissal of the First Amendment claim on the alternate

---

[6]Decker also maintains that the defendants threatened his tenured job and promised him perpetually low ratings. The record provides less than scant evidence with respect to these assertions. Even if supportable, an employer's threat to take certain action--as opposed to the action itself--does not qualify as an adverse employment decision. <u>Mattern</u>, 104 F.3d at 708 (noting verbal threat of discharge fails to suffice as an adverse employment action).

ground that Decker suffered no actionable adverse employment decision.

B

Decker also argues that the district court erred in dismissing his Texas Whistleblower Act ("TWA") claim, a ruling also premised on statute of limitations grounds. The TWA provides that a plaintiff seeking relief "must sue not later than the 90th day after the date on which the alleged violation of this chapter: (1) occurred; or (2) was discovered by the employee through reasonable diligence." Tex.Gov.Code Ann. § 554.005 (Vernon 1994). The district court determined that Decker "first became aware that he was being retaliated against . . . in January 1994." The court then determined that Decker "forfeited his right to seek relief under the [TWA] by waiting almost two and a half years to file this lawsuit."

As with Decker's First Amendment claim, we forego engaging in any discussion with respect to the statute of limitations issue. We again rely on the rule that if other grounds exist that will suffice to uphold the district court's decision, we may affirm on those alternate grounds, Bramblett, 960 F.2d at 530, and we turn to examine the merits of his claim.

To prevail under the TWA, Decker must demonstrate that:

1) he reported to an appropriate law enforcement authority a good faith belief that the defendants were violating the law; and

9

>     2) the defendants discriminated against him because of
>     his reporting actions.

Tex.Gov.Code Ann. §§ 554.002–554.003 (Vernon Supp. 1998)[7]; <u>Forsyth v. City of Dallas, Tex.</u>, 91 F.3d 769, 775 (5th Cir. 1996) (noting that "employee must demonstrate that (a) the employee reported an alleged violation of law to an appropriate law enforcement authority; (b) the employee made the report in good faith; (c) the employer took an adverse employment action against the employee because the employee made the report; and (d) the employer's action proximately caused the employee's injuries").

Decker maintains that he reported to the state auditor the University's allegedly fraudulent practice of receiving state funds for sham paper courses. The defendants do not dispute that Decker took this action or that it suffices under the first reporting requirement. Decker further maintains that genuine issues of fact exist with respect to whether he has demonstrated that the defendants took adverse personnel actions against him when they did because of his protected activities. <u>Department of Human Servs. v. Hinds</u>, 904 S.W.2d 629, 636 (Tex. 1995) (noting plaintiff must demonstrate employer's prohibited conduct would not have occurred

---

[7]The Act provides:
A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.
Tex.Gov.Code Ann. § 554.002(a) (Vernon Supp. 1998).

when it did absent plaintiff's protected conduct). The Act defines "personnel action" to include "an action that affects a public employee's compensation, promotion, demotion, transfer, work assignment, or performance evaluation." Tex.Gov.Code Ann. § 554.001(3). Decker's receipt of a low merit rating in March 1996 apparently falls within this definition. Hinds, 904 S.W.2d at 631.

The only remaining determination is whether Decker would have received the low merit rating when he did, absent his protected reporting conduct. Hinds, 904 S.W.2d at 636. The defendants contest establishment of this fact of causation. They assert as an affirmative defense that they would have taken the same action-- issuing a merit rating of "1" in 1996 for the 1995 school year-- even had Decker not tattled to the state auditor in May 1993. Tex.Gov.Code Ann. § 554.004(b).

First, Olivares submitted that he had no knowledge of Decker's whistleblowing actions until Decker filed this lawsuit, and Decker submitted no contrary evidence. Even had Decker created a genuine issue of material fact concerning Olivares's knowledge aforehand, we fail to see how Decker could have connected Olivares to the low merit rating he received in 1996. A committee of faculty members from Decker's department conducts an annual review to determine each professor's productivity for the past year and assign each professor a merit rating. Olivares was not a member of that committee. Furthermore, each committee member explained that Decker received low merit ratings for the 1994 and 1995 school

11

years because they were disappointed by the lack of Decker's meritorious productivity--not because he reported allegedly fraudulent University practices to the state auditor.

Decker also cites as an adverse personnel action the defendants' refusal to allow him to appeal the low merit rating. The defendants showed, however, that Decker passed up two opportunities to appeal the rating before the deadline passed. Decker met with Dr. Dowling, the merit evaluation chairperson, the day before the appeal deadline and he telephoned her the following day before the noon deadline passed. On neither occasion did Decker inform Dr. Dowling of his intent to appeal. Because he missed the deadline, Dr. Dowling--not any of the defendants-- refused to allow the appeal. Based on the record before us, there is no genuine issue of material fact with respect to the lack of a causal link between Decker's low merit rating issued March 1996 (and his failure to appeal that rating) and his protected reporting actions under the TWA. His protected activities simply played no role in those challenged decisions.

C

The district court properly dismissed Decker's intentional infliction of emotional distress claim. In order to prevail under Texas law on this claim, a plaintiff must demonstrate

> (1) that the defendant acted intentionally or recklessly,
> (2) that the defendant's conduct was extreme and
> outrageous, (3) that the defendant's actions caused the
> plaintiff emotional distress, and (4) that the emotional
> distress suffered by the plaintiff was severe.

<u>Weller v. Citation Oil & Gas Corp.</u>, 84 F.3d 191, 195 (5th Cir. 1996).  The conduct complained of must be "outrageous" in that it "surpasses all bounds of decency, such that it is utterly intolerable in a civilized community." <u>Id.</u> The employment dispute at issue in this case fails to meet the standard.  Indeed, Decker apparently concedes this point.  Blue Brief at 38 ("Nevertheless, while preserving this claim on appeal, Dr. Decker recognizes that the conduct described is not of the same nature that current Fifth Circuit law recognizes for intentional infliction of emotional distress to be actionable.").  The district court properly dismissed this claim.

D

Decker next maintains that the district court erroneously cloaked a defamatory memorandum written by Olivares with qualified privilege and thus erroneously dismissed his defamation claim. Olivares wrote to Decker on June 20, 1995, stating his dissatisfaction with and the consequences of Decker's refusal to teach upper division courses.  Olivares published the document to two other defendants, Drs. Pipkin and Giacchetti.  The statements concern Decker's business and profession and Decker argues that they are thus defamatory per se.  Olivares contends that the memorandum is cloaked with qualified immunity and that Decker failed to demonstrate that the statements were not made in good faith.  The district court granted summary judgment on the basis

13

that the plaintiff failed to demonstrate that Olivares entertained serious doubts about the veracity of the memorandum.

Under Texas law, a statement is defamatory per se if it is so obviously injurious that no proof of harm is necessary to prevail in an action based on the statement. Simmons v. Ware, 920 S.W.2d 438, 451 (Tex.App. 1996) (discussing slander per se). Statements falling within this category are those that tend to injure a person in his business or occupation. Gray v. HEB Food Store #1, 941 S.W.2d 327, 329 (Tex. App. 1997); Simmons, 920 S.W.2d at 451. The parties do not dispute that the statements contained within the Olivares memorandum concerned Decker's performance in his profession. Olivares also does not seriously argue that the statements were not injurious in nature.[8]

Instead, the defendants assert that dismissal is proper on the basis of a qualified privilege. "A privilege will be granted to statements that occur under circumstances wherein any one of several persons having a common interest in a particular subject matter may reasonably believe that facts exist that another, sharing that common interest, is entitled to know." Hanssen v. Our Redeemer Lutheran Church, 938 S.W.2d 85, 92 (Tex.App. 1996); see also Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 646 (Tex. 1995).

---

[8]Although the defendants made no serious argument on this issue and instead focus on the privilege issue, truth is a complete defense to a claim of defamation. El Centro del Barrio, Inc. v. Barlow, 894 S.W.2d 775, 781 (Tex.App. 1994).

14

In this instance, Olivares published his memorandum to two other faculty members, Pipkin and Giacchetti.[9] These two individuals--the former, an Associate Chair responsible for course assignments and the latter, the Dean--clearly had a common interest in the facts set out in Olivares's memorandum. That this is a proper situation for the application of a qualified privilege is not significantly in doubt.

However, an affirmative defense of qualified privilege may be defeated. Under Texas law, to defeat the affirmative defense, the plaintiff has the burden at trial of proving malice. Hanssen, 938 S.W.2d at 92. For the purposes of summary judgment, Celotex requires the burden of proving malice to remain with the plaintiff.[10] Celotex Corp. v. Catrett, 477 U.S. 317, 322 106 S.Ct. 2548, 2552 (1986) (under Fed.R.Civ.P. 56(c), a nonmovant is required to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 314 (5th Cir. 1995). Therefore, to avoid summary judgment, Decker has the

---

[9]Decker intimates that Olivares may orally have published the contents of his memorandum to other individuals. He did not direct this court's attention, however, to any evidence in the record supporting this assertion.

[10]The situation is different, however, under Texas summary judgment law, where the moving party has the burden of proving the absence of malice. Hanssen, 938 S.W.2d at 93. The nonmovant has no burden to produce proof on an element of his claim until that element has been conclusively negated by the movant. Lesbrookton, Inc. v. Jackson, 796 S.W.2d 276, 286 (Tex.App.-Amarillo 1990, writ denied 1991).

burden of creating a genuine issue of material fact that Olivares acted with malice when he made the statements in his memorandum. Id. Malice may be shown where the defendant made a statement with actual knowledge of its falsity or with reckless disregard of its falsity. Hanssen, 938 S.W.2d at 92. However, proof must demonstrate the defendant's "high degree of awareness of the statement's probable falsity." Id. Applying these standards, Decker undoubtedly failed to meet his burden. There is no genuine issue of material fact with respect to Olivares' reasonable belief in the truth of his statements in the memorandum.

E

Decker also complains that the district court misconstrued his due process claims and incorrectly determined that they did not "rise to the level of a constitutionally protected property interest." He has presented arguments under both the substantive and procedural due process prongs. It is axiomatic that the procedural due process clause is implicated only if Decker has a constitutionally recognized interest in property. Johnson v. Rodriquez, 110 F.3d 299, 308 (5th Cir. 1997); Frazier v. Garrison I.S.D., 980 F.2d 1514, 1528 (5th Cir. 1993) (citing Cleveland Board of Educ. v. Loudermill, 470 U.S. 532 (1985); Board of Regents v. Roth, 408 U.S. 564 (1972)). "Certainly the constitutional right to 'substantive' due process is no greater than the right to procedural due process." Hardy v. University Interscholastic League, 759 F.2d 1233, 1235 (5th Cir. 1985) (quoting Jeffries v.

16

Turkey Run Consolidated Sch. Dist., 492 F.2d 1, 4 (7th Cir. 1974)).

As such, we first address whether Decker has a constitutionally

protected property interest in any right he alleges the defendants

infringed.

(1)

The defendants maintain that they did not violate Decker's

substantive or procedural due process rights under the Fourteenth

Amendment because Decker did not suffer the deprivation of any

property interest.  Decker argues that his protected property

interests are "his tenured faculty position and its corresponding

benefits."  Specifically, he maintains that scheduling him to teach

back-to-back courses effectively denied him his property interest

in continued public employment and the attendant benefit of medical

leave.

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.  It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.

Board of Regents v. Roth, 92 S.Ct. 2701, 2709 (1972); see also

Frazier v. Garrison I.S.D., 980 F.2d 1514, 1529 (5th Cir. 1993)

(noting plaintiff has constitutionally protected property interest

if he has a reasonable expectation of receiving the benefit).  In

addition, a property interest falling under due process protections

must be established by reference to some outside source--such as

17

state law or contract. <u>Martin v. Memorial Hosp. at Gulfport</u>, 130 F.3d 1143, 1147 (5th Cir. 1997) (citing <u>Roth</u>, 92 S.Ct. at 2704). The interest does not exist independently by force of the due process clause itself. Furthermore, the limitations of that interest are also set by the outside source that created the interest. <u>Id.</u>

The defendants do not dispute that a tenured professor such as Decker has a protected property right in continued employment. Decker, however, remains a fully tenured professor at the University; he has thus not been deprived of any property interest in continued employment because that employment has not been interrupted. Furthermore, absent a limiting contractual provision, Decker has no property right in his assignment of teaching courses. <u>Kinsey v. Salado Indep. Sch. Dist.</u>, 950 F.2d 988, 997 (5th Cir. 1992). "[U]nless the state 'specifically creates a property interest in a noneconomic benefit--such as a work assignment--a property interest in employment generally does not create due process property protection for such benefits.'" <u>Davis v. Mann</u>, 882 F.2d 967, 973 n.16 (5th Cir. 1989) (quoting <u>Jett v. Dallas Indep. Sch. Dist.</u>, 798 F.2d 748, 754 n.3 (5th Cir. 1986)). Decker has pointed to no written contract or presented evidence of any oral agreement with the University that the defendants always would accommodate his scheduling requests. Decker thus has no

18

constitutionally protected right in having nonconsecutively scheduled courses.[11]

Decker also submits that he has a protected property interest in a rational application of the University's merit evaluation process. The evidence is not clear as to the exact correlation between the merit evaluations and pay increases. Apparently, however, the ratings are the most important factor considered when determinations of merit salary adjustments are made. The University has set up and adhered to an established system for evaluating a professor's performance of the previous school year. We will thus assume, without deciding, that genuine issues of material fact exist with respect to whether Decker obtained a property interest in an unbiased application of the merit rating system.

(2)

"'To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that he had a property interest/right in his employment, and

---

[11]Even if a genuine issue of material fact existed with respect to Decker's demonstration of a property right in his class assignments, he cannot recover absent a showing that the defendants acted arbitrarily and capriciously when they infringed that interest. Harrington, 118 F.3d at 368. The defendants assigned Decker to teach back-to-back courses because of other class cancellations and Decker's refusal to teach upper level courses. There is no genuine issue of fact as to this matter and the defendants' actions are thus not irrational so as to violate the Constitution. Neuwirth v. Louisiana State Bd. Of Dentistry, 845 F.2d 553, 558 (5th Cir. 1988).

19

(2) that the public employer's termination of that interest was arbitrary or capricious.'" Harrington, 118 F.3d at 368 (quoting Moulton v. City of Beaumont, 991 F.2d 227, 230 (5th Cir. 1993)). Assuming the existence of a property interest in the rational application of the merit evaluation system, we look to whether the defendants' assignment of a merit rating of "2" and "1" for the 1994 and 1995 school years, respectively, amounted to some unconstitutional violation.

As with the defendants' assignment of courses, there is no genuine issue of material fact with respect to Decker's receipt of two low evaluation ratings. The evaluation committee members provided affidavits setting out rational and well supported grounds for the low scores accorded Decker's performance, including a dearth of published scholarly papers, lack of research projects, mediocre to scathing teaching evaluations, and an overall lack of incentive to serve as demonstrated by his record. Decker submits that Olivares's memorandum provides direct proof that his low ratings had been "pre-ordained" and that he was to receive them in perpetuity. Notwithstanding Decker's assertions, the memorandum merely sets out Olivares's intention to *recommend* low evaluation ratings to the committee (of which he was not a member) until Decker agreed to teach a full course load including upper level classes. Assuming Decker possesses a property interest in the rational application of the evaluation process, the assignment of

the two low ratings did not infringe Decker's substantive due process rights.

(3)

Decker also argues that the merit evaluation process, as applied to him, violated his procedural due process guarantees.[12] The Supreme Court has set out that notice and a hearing are the minimum requirements before an individual may constitutionally be deprived of a property interest. <u>Systems Contractors Corp. v. Orleans Parish Sch. Bd.</u>, ___ F.3d ___, 1998 WL 422633, *3 (5th Cir.) (citing <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976)); <u>Delahoussaye v. City of New Iberia</u>, 937 F.2d 144, 151 (5th Cir. 1991). But, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." <u>Systems Contractors</u>, 1998 WL 422633, *3 (quoting <u>Mathews</u>, 424 U.S. at 334).

Decker first complains that the defendants, contrary to published guidelines, never provided him with written justification for the "1" rating he received in March 1996 for the 1995 school year. He also contends that the defendants denied him an opportunity to appeal this rating. Similarly, he submits that the defendants refused to allow him an opportunity to appeal the "2"

---

[12]For the purpose of this discussion, we again assume, without deciding, the existence of the relevant property right. Furthermore, having previously concluded that no genuine issue of material fact exists with respect to the defendants' alleged "pre-ordination" of low merit ratings for Decker's performance, we decline to again address this argument.

rating he received in April 1995 for the 1994 school year. The evidence proves, however, that Decker received notice of the low ratings and was provided an opportunity to be heard. Specifically, the defendants informed him of the relevant appeal procedures, including the deadline for informing the University of his intent to appeal. Decker allowed the deadlines to expire, thus, waiving any right to further due process.[13] The record is clear--that is, there is no genuine issue of material fact--that the defendants did not violate the Constitution by failing to provide Decker adequate procedural due process.

---

[13]Although Decker maintains that he was on sick leave at the relevant times of appeal, he does not argue that he lacked notice of the appeal deadline or that he could not have informed the defendants of his intent to appeal before the deadline passed.

22

F

Decker argues that the district court erred when it dismissed his claim that the defendants discriminated against him because of his alleged disability. The court held that his claim of employment discrimination was barred under Title II of the Americans with Disabilities Act ("ADA") because he failed to adhere to the administrative regime set out under Title I. The parties contest whether a claim for employment discrimination is cognizable under Title II and, if so, whether Title II requires exhaustion of the administrative remedies set out under Title I prior to the filing of a lawsuit. These are issues of first impression in this circuit.[14] We need not reach them, however, because the defendants met their summary judgment burden in demonstrating that Decker did not suffer an adverse employment decision because of his disability.

To prevail on his ADA claim, Decker must demonstrate that (1) he has a disability; (2) he is qualified for the job; (3) an adverse employment decision was made solely because of his

---

[14]Several courts have addressed this question and the majority have determined that Title II recognizes claims for employment discrimination. See Bledsoe v. Palm Beach County Soil & Water Conservation Dist., 133 F.3d 816 (11th Cir. 1998) (discussing issue at length); Holbrook v. City of Alpharetta, Ga., 112 F.3d 1522, 1528-29 (11th Cir. 1997) (assuming issue); McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1073 (11th Cir. 1996) (same); Doe v. University of Maryland Med. Sys. Corp., 50 F.3d 1261, 1265 (4th Cir. 1995); Wagner v. Texas A & M Univ., 939 F.Supp. 1297, 1308-11 (S.D.Tex. 1996). We, however, need not and do not reach this question because its determination is unnecessary to the ultimate resolution of this case.

23

disability.  Rizzo v. Children's World Learning Ctrs., Inc., 84 F.3d 758, 763 (5th Cir. 1996).  Decker submits that he suffered adverse employment actions when (1) he received a merit rating of "1" while on medical leave; (2) the defendants refused to allow his appeal of that rating; (3) the defendants assigned him consecutive courses to teach; and (4) the defendants threatened to fire him.

None of these alleged actions arise to the level of an actionable adverse employment action under the ADA.  As discussed *supra* in Part III(A) (discussing adverse employment action in First Amendment context), Decker has not alleged that he suffered any type of ultimate employment action.  See Mattern, 104 F.3d at 707-08; Dollis, 77 F.3d at 781-82.  None of the alleged retaliatory acts (from the low merit rating to even the consecutive class assignments) had anything more than a tangential effect, if that, on his position.  He suffered no decrease in his salary and he remains a tenured faculty member at the University.  Decker's ADA claim thus fails.

IV

In sum, the district court did not err when it granted summary judgment in favor of the defendants against all of Decker's claims.[15]  Without reaching Decker's argument that his First

---

[15]The district court also did not abuse its discretion in denying Decker's Motion for New Trial and to Set Aside Judgment Under Federal Rule of Civil Procedure 60(b).  Carter v. Fenner, 136 F.3d 1000, 1005 (5th Cir. 1998) (noting "motions under Rule 60(b) are directed to the sound discretion of the district court"). Decker presented new "evidence" including: the University's

24

Amendment and Texas Whistleblower Act claims are not barred by their respective limitations periods, alternative grounds exist for their dismissal. Similarly, no genuine issue of material fact exists with respect to the district court's determination that the affirmative defense of privilege shields Olivares's allegedly defamatory memorandum and the district court thus did not err in dismissing Decker's defamation claim. Furthermore, the district court correctly determined that there is no merit to Decker's claim for intentional infliction of emotional distress or his due process claims. Finally, Decker's ADA claim was properly dismissed. We need not decide at this juncture whether Title II of the ADA recognizes a claim for employment discrimination or, if it does, whether a plaintiff must first exhaust his administrative remedies before bringing a suit for disability discrimination in an employment context under Title II. The summary judgment evidence fails to establish that Decker suffered an adverse employment action cognizable under the ADA and his claim fails for that reason.

---

September 1997 response to the Commission on Colleges inquiries regarding the existence of paper courses; quotes of top University administrators that appeared in local newspapers in late 1997 also concerning that same subject; and a letter wherein defendants' counsel allegedly admitted that Decker was disabled. Having reviewed the proffered evidence, we are convinced that it works no consequence on our decision today.

For the foregoing reasons, the judgment of the district court is

A F F I R M E D.