**Patricia BREEDEN, M.D. Plaintiff**

**v.**

**UNIVERSITY OF MISSISSIPPI MEDICAL CENTER and University Emergency Physicians, PLLC, and Robert L. Galli, M.D. (In his Individual Capacity) Ted Woodrell Defendants**

**No. CIV.A. 3:99–CV–795WS.**

United States District Court,
S.D. Mississippi,
Jackson Division.

Sept. 5, 2001.

John L. Maxey, II, Christina L. Carroll, Maxey, Wann, Fyke & Hawkins, PLLC, Jackson, MS, for Patricia C. Breeden, plaintiff.

M. Curtiss McKee, Jerrald L. Shivers, Stubblefield, Harvey & Shivers, PLLC, Jackson, MS, for University Medical Center, of Mississippi, University Emergency Physicians, PLLC, Robert L. Galli, defendants.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before this court is the motion of the defendant Robert L. Galli, M.D. (hereinafter "Dr. Galli") styled a Motion to Determine Qualified Immunity. By this motion, Dr. Galli, the defendant, asks this court to hold that he is immune from the plaintiff's claims against him in his individual capacity. Plaintiff, Dr. Patricia Breeden, also a medical physician, in her complaint accuses defendant of pursuing retaliatory measures against her for speaking out in the workplace against sex discrimination. Plaintiff brings this claim under Title 42 U.S.C. § 1983.[1]

■ Defendant submits this motion [item # 50–1] pursuant to Rule 26.1(A)(10)[2] of the Uniform Rules of this court and Rule 12(b)(6) of the Federal

---

**1.** Title 42 U.S.C. § 1983 states in pertinent part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress."

**2.** Rule 26.1(A)(10) provides in pertinent part that, "[i]n all cases in which an immunity defense is pled, that defense shall be raised in a separate motion as expeditiously as possible after the filing of the complaint. The filing of an immunity complaint defense motion shall stay all discovery not relevant to the immunity issue and stay the parties' obligation to make further disclosures pending the Court's ruling on the motion issued, including any appeal."

Rules of Civil Procedure.[3]

Plaintiff originally sued Dr. Galli[4] under Title 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e,[5] based on the assertion that the plaintiff had been subjected to unlawful sexual discrimination and retaliation while employed by the defendants. Once defendant filed the instant motion to determine immunities, the plaintiff responded by announcing that she would abandon her sex discrimination claims under § 2000e against Dr. Galli and proceed against him solely on the claim of retaliation under § 1983.[6] Thus, the sole issue here is whether under the law defendant Dr. Galli enjoys immunity against plaintiff's claim of retaliation.

The plaintiff is a resident citizen of Colorado, while the defendants all are resident citizens of Mississippi. The plaintiff's assertion of federal jurisdiction over this matter is based on Title 28 U.S.C. § 1331 (federal question)[7] and on Title 42 U.S.C. § 2000e–5(f)(3).[8]

---

3. It is well-settled that qualified immunity is an affirmative defense, and that "the burden of pleading it rests with the defendant." *Crawford–El v. Britton,* 523 U.S. 574, 586–87, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (quoting *Gomez v. Toledo,* 446 U.S. 635, 639–641, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)). Rule 12(b)(6) provides that "[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (6) **failure to state a claim upon which relief can be granted".**

4. Plaintiff also sues in this same action the University of Mississippi Medical Center; University Emergency Physicians, PLLC; and Ted Woodrell. These parties are not involved in the instant motion.

5. Title 42 U.S.C. § 2000e–2(a) provides that "[i]t shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, or conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; ..."

6. Plaintiff appears to be seeking to avoid a possible counter-attack by Dr. Galli that claims under Title 42 U.S.C. § 1983 are precluded when Title VII provides the exclusive remedy in a federal employment discrimination suit. For instance, Dr. Galli might have argued that, as a matter of law, it would be error to allow the plaintiff to assert both Title VII and section 1983 claims, based on the same underlying facts, citing *Jackson v. City of Atlanta, Tx.,* 73 F.3d 60, 62 (5th Cir.), *cert. denied,* 519 U.S. 818, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996). However, such an assault could have been stalled at the breastworks of a clear constitutional tort claim which was separate from the plaintiff's sex discrimination claim. *See Johnston v. Harris County Flood Control Dist.,* 869 F.2d 1565, 1573 (5th Cir.1989), *cert. denied,* 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990), analyzing the relationship between Title VII and section 1983, and holding that when a public employer's conduct violates both Title VII and a separate constitutional or statutory right, the injured employee may pursue a remedy under § 1983 as well as under Title VII.

7. Title 28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States."

8. Title 42 U.S.C. § 2000e–5(f)(3) provides in pertinent part that "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in

## PERTINENT FACTS

■ The plaintiff was hired by the University of Mississippi Medical Center (the "Medical Center"), Department of Emergency Medicine, on or about March 18, 1996. According to her second amended complaint, as a condition of her employment, she was required to be employed simultaneously by University Emergency Physicians, PLLC, a defendant in this cause. Dr. Galli, says plaintiff, owned 95% of the stock in University Emergency Physicians, PLLC, in 1998, and was himself employed by this limited liability professional corporation. Furthermore, says plaintiff, Dr. Galli served as the Chairperson of the Medical Center's Department of Emergency Medicine and, resultantly, was a state actor for the purposes of the plaintiff's claims under Title 42 U.S.C. § 1983. This allegation of being a state actor is key since this is a vital element of proof for a § 1983 claim. *Becerra v. Asher*, 105 F.3d 1042, 1045 (5th Cir.1997) (to state a claim under § 1983, the plaintiff ... must show that the alleged deprivation was committed by a person acting under color of state law); and *Doe v. Rains County Independent School District*, 66 F.3d 1402, 1410 (5th Cir.1995) (same).

The plaintiff asserts that from the time she was employed until she received her notice that her contract of employment would not be renewed, she witnessed preferential treatment being given to male employees in the Emergency Department. For example, says plaintiff, an all male executive faculty committee met with the Chairman, Dr. Galli, monthly. Supposedly, says plaintiff, membership on the committee was to be based on seniority; however, the plaintiff contends that a male faculty member who was junior to the next eligible female faculty member was selected by Dr. Galli to be a member of the committee while the female faculty member was not selected.

Additionally, says plaintiff, female faculty members were instructed to seek female mentors outside the department, while the male faculty members within the department served as mentors only for other male faculty members. Disparaging comments, says plaintiff, were made about women, and demeaning photographs were circulated in the Department. These actions, says plaintiff, were ratified by the Medical Center.

Plaintiff explains that during her employment, members of the faculty of the Department of Emergency Medicine had duties in three specific areas: administrative, research, and clinical. According to the plaintiff, promotion within the department required reaching administrative and research goals. Female faculty members of the Department of Emergency Medicine, however, complains plaintiff, were assigned a disproportionate share of clinical hours by Dr. Galli, thereby affecting their ability to gain promotion, since an increase in clinical hours would interfere with a faculty member's ability to participate in research and in administrative matters.

Plaintiff says she complained about this apparent inequitable distribution of clinical hours to Dr. Galli on March 3, 1998, shortly after her own clinical hours had been increased from 107 hours to 121 hours, an 11.5% increase. When her complaint went unresolved, the plaintiff says she then complained to Don Seagrove, Director of Human Resources. Notwithstanding her complaints, says plaintiff, her clinical hours again were increased, from 121 hour to 130 hours. Plaintiff notes that, despite this increase in her clinical hours, the defendants continued to insist that she was "be-

which the respondent has his principal office...."

hind" in her proportionate share of clinical duty by 57 hours.

Plaintiff says this ill treatment continued. Meanwhile, plaintiff says she began speech-related activities against what she viewed as a discriminatory policy based on sex, meeting with all the women in the Department who had voiced several complaints, including the scheduling of clinical hours, and by bringing these complaints to the attention of Dr. Galli at these meetings. Plaintiff says that she and another female faculty member filed a formal complaint about this matter with the office of Federal Contract Compliance Programs, United States Department of Labor.

After she began her speech-related activities, says plaintiff, she was informed by the defendants that her contract would not be renewed for the 1999–2000 period. Then, in further retaliation, according to the plaintiff, the defendants assigned her to clinical duty in order to exclude her from faculty meetings.

According to the deposition of Dr. Frederick Carlton offered by the plaintiff, who was one of the physicians in the department at the time in question, Dr. Galli expressed his displeasure with Dr. Breeden's activities, and once stated to Dr. Carlton that an employer did not have to terminate an unwanted employee if the employer simply made the individual's working conditions unbearable. Furthermore, when asked if Dr. Galli ever had stated that Dr. Breeden would be terminated if she filed a discrimination lawsuit, Dr. Carlton replied that he did not remember the specific comment, but he would not dispute the plaintiff's contention that this was said by Dr. Galli to Dr. Carlton.

Plaintiff says she also sought administrative relief regarding scheduling and her claims of sexual harassment from the Office of Federal Contract Compliance Programs located in Washington, D.C.,[9] which informed her that it could not obtain individual relief on her behalf. Next, plaintiff says she approached the United States Department of Labor (USDL) on September 24, 1998, contending that the defendants' actions in this case constituted a pattern and practice of sex discrimination by Robert Galli, M.D., University Emergency Physicians, PLLC, and the Department of Emergency Medicine of the Medical Center. The USDL, says plaintiff, determined that her complaint was governed by Title VII of the Civil Rights Act of 1964 and referred her to the Equal Employment Opportunity Commission (EEOC). The plaintiff then filed a charge of discrimination with the EEOC, alleging discrimination on the basis of sex and retaliation on September 24, 1998.

Meanwhile, says plaintiff, Dr. Galli made good on his alleged promise to make her working conditions unbearable. Plaintiff contends that retaliatory action by Dr. Galli, including the changes in the plaintiff's working conditions to try to force her out of her job, resulted in her constructive discharge in April, 1999.

On or about September 7, 1999, EEOC issued plaintiff a right-to-sue letter for sex discrimination. Plaintiff then filed this lawsuit on November 16, 1999, within ninety (90) days after the plaintiff had received the Notice of Right to Sue issued by the EEOC pursuant to Title VII of the Civil Rights Act of 1964. No one argues that the plaintiff has not complied with all stat-

---

**9.** The customer service address is:
NATIONAL OFFICE
Office of Federal Contract Compliance Programs

U.S. Department of Labor
200 Constitution Avenue N.W. Room C–3325
Washington, D.C. 20210

utory and administrative prerequisites to filing a sex discrimination lawsuit; however, even if such an issue is raised, that matter is moot since the plaintiff now has abandoned her Title VII claims against Dr. Galli.

The plaintiff amended her complaint on January 26, 2000. Then, on March 6, 2000, the plaintiff once again amended her complaint to include a constitutional tort claim pursuant to Title 42 U.S.C. § 1983 for retaliation. Dr. Galli then filed the instant motion before the court, moving this court to hold that he is entitled to qualified immunity from the plaintiff's § 1983 claims. The plaintiff responded by abandoning her sex discrimination claim against Dr. Galli, but opposing Dr. Galli's stance on qualified immunity on her § 1983 claim for retaliation. Thus, the interrogatory for this court to determine, in light of the plaintiff having abandoned her sex discrimination claim against Dr. Galli, is whether he may claim immunity in his individual capacity from the plaintiff's sole charge against him, retaliation under § 1983 for complaining about sex discrimination.

### THE MATTER OF IMMUNITY FROM § 1983 CLAIMS

■ Private individuals acting under the color of law are subject to § 1983 liability and may not claim the benefit of the qualified immunity doctrine. *Richardson v. McKnight,* 521 U.S. 399, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997). Qualified immunity serves to "protect[ ] government's ability to perform its traditional functions by providing immunity where necessary to preserve the ability of government officials to serve the public good or to ensure that talented candidates were not deterred by the threat of damages suits from entering public service". *Id.,* 117 S.Ct. at 2100;

*United States v. Thomas,* 240 F.3d 445, 448 (5th Cir.2001).

■ The action of a private party such as Dr. Galli may constitute state action when there is a sufficiently close nexus between the state and the challenged action of Dr. Galli so that the action of the latter may be fairly treated as that of the state itself. *Golden v. Biscayne Bay Yacht Club,* 521 F.2d 344, 349–53 (5th Cir. 1975). In the instant case Dr. Galli owned and operated the facility that provided all the emergency clinical services for the University of Mississippi Medical Center. In her complaint, plaintiff charges that Dr. Galli is a state actor. Thus, for the purpose of the instant motion to determine immunity, and inasmuch as a private individual cannot claim benefit of qualified immunity, this court, in consonance with plaintiff's pleading, shall assume that Dr. Galli is, or at least claims to be, a public employee or government official.

■ Under "qualified immunity," government officials are not subject to liability for the performance of their discretionary actions unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3038– 3040, 97 L.Ed.2d 523 (1987). So, in the instant case, in order for qualified immunity to be unavailable to Dr. Galli as a government official, the federal law proscribing retaliation for filing a lawsuit pursuant to Title 42 U.S.C. § 1983 must have been established clearly and not abstractly so that the contours of the right were sufficiently clear at the time in question, and that a reasonable official would understand that what he was doing violated that right. *Anderson v. Creighton,* 107 S.Ct. at

3039; *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir.1997).

The test for qualified immunity is understandably twofold. First, the court must determine whether the conduct alleged would have deprived a § 1983 plaintiff of a "clearly established" constitutional or statutory right. *Wilson v. Layne*, 526 U.S. 603, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999); *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 638 (5th Cir.2000); and *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir.1997). Secondly, even if the court finds that an official has violated a clearly established right, the court must determine whether the official's conduct was objectively reasonable. If the public official's conduct is deemed objectively reasonable, the court still must find that the public official is shielded by qualified immunity. *Wilson*, 119 S.Ct. at 1699.

The procedural rules of inquiry are also straightforward. A motion to dismiss a § 1983 claim on the basis of qualified immunity "may be granted only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir.1995). This court must construe all of the plaintiff's allegations in the complaint favorably and accept as true all well-pleaded facts in the complaint. *La Porte Construction Company v. Bayshore National Bank*, 805 F.2d 1254, 1255 (5th Cir.1986).

### ANALYSIS

As far back as January of 1988, the Fifth Circuit Court of Appeals in *Forsyth v. City of Dallas, Tex.*, 91 F.3d 769, 775 (5th Cir.1996), proclaimed that reasonable government officials should know that retaliating against an employee for exercising First Amendment rights would subject them to civil liability. The retaliation alleged by the plaintiff occurred in 1998 and 1999. Thus, this court finds that the constitutional right claimed by the plaintiff was established clearly at the time of Dr. Galli's alleged conduct.

The second prong of the test for immunity requires the court to assess the objective reasonableness of the conduct in question. In order to answer this question, the court must analyze the plaintiff's allegations under the § 1983 law of retaliation.

To state a valid claim for retaliation under § 1983, the Fifth Circuit requires a plaintiff to allege (1) a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a specific retaliatory adverse act; and (4) causation. *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir.1999), citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir.1998). A plaintiff must allege more than just a personal belief that she is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.) *cert. denied*, 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997). Mere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995).

In the instant case the plaintiff has alleged a chronology of events which, prima facie, may support a claim of retaliation. The plaintiff alleges that she engaged in speech-related activity by meeting with other female employees and by speaking out against alleged sex discrimination at the emergency clinic, ostensibly a matter of public concern, and against what she perceived to be unequal treatment of female physicians in the emergency clinic. The First Amendment to the United States Constitution is made applicable to the states through the Fourteenth Amend-

ment's Due Process Clause. *McIntyre v. Ohio Elections Commission,* 514 U.S. 334, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). As such, a plaintiffs' First Amendment retaliation claim may be characterized as a "substantive due process" claim. *Rolf v. City of San Antonio,* 77 F.3d 823, 827 (5th Cir.1996); and *Brennan v. Stewart,* 834 F.2d 1248 (5th Cir.1988), and accordingly, this court finds that the plaintiff in the instant case has asserted violation of a specific constitutional right.

Next, the plaintiff's allegations present specific retaliatory adverse acts and establish a foundation for her assertion that Dr. Galli intentionally retaliated against her by refusing to renew her contract of employment and by making the working conditions of her remaining employed unbearable, thereby causing her alleged constructive discharge in April of 1999. *Harrington v. Harris,* 108 F.3d 598, 603 (5th Cir.1997) (a plaintiff must show that he suffered an adverse employment action to state a retaliation claim under section 1983). Plaintiff also charges that Dr. Galli had threatened to terminate her employment if she filed a sex discrimination lawsuit. *Pierce v. Texas Department of Criminal Justice,* 37 F.3d 1146, 1150 n. 1 (5th Cir.1994) ("[m]ore than a trivial act of retaliation [is required] to establish constitutional harm" in a 1983 case).

As earlier stated, the second prong of the test for immunity looks to whether the conduct in issue was objectively reasonable. Here, where plaintiff's complaint alleges facts which seem to establish a prima facie case of retaliation under § 1983, this court cannot conclude that defendant's conduct was objectively reasonable. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982))

("whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time it was taken..."). The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Thompson v. City of Starkville, Mississippi,* 901 F.2d 456, 468–69 (5th Cir.1990), citing *Elliott v. Perez,* 751 F.2d 1472, 1477 n. 13 (5th Cir.1985) ("Under the qualified immunity standard, government officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

### CONCLUSION

For the purpose of this motion to determine Dr. Galli's entitlement to qualified immunity from § 1983 claims in his individual capacity, this court has accepted as true the well pleaded allegations of the plaintiff's complaint and the supporting documentation. Having analyzed these alleged factual offerings under the applicable law, this court hereby concludes that a reasonable public official would have understood that such acts of retaliation as alleged herein would violate a § 1983 plaintiff's clearly established constitutional right to be free from such retaliation for having complained about discrimination and for having initiated meetings among the female employees of the emergency service department in order to correct the situation. Further, this court finds that the conduct attributed to Dr. Galli does not meet the objectively reasonable test to trigger immunity. Therefore, this court finds that Dr. Galli is not entitled to claim benefit of qualified immunity from the

plaintiff's § 1983 claim of retaliation. *Thompson v. City of Starkville, Miss.*, 901 F.2d 456, 465 n. 14 (5th Cir.1990), citing *Brawner v. City of Richardson*, 855 F.2d 187, 192 (5th Cir.1988) (reasonably objective public official would have known that termination of an employee for his speech concerning misconduct by public officials would violate a clearly established constitutional right).

The court cautions the parties to remember that this court's ruling goes only to the issue of whether Dr. Galli is entitled to claim qualified immunity for the plaintiff's § 1983 claim of retaliation. This ruling is not to be construed as a ruling on the merits of the plaintiff's § 1983 claim.